Walter H. KUPAU, Gordon Yanagawa, and Robert Oyadomari, Plaintiffs-Appellees,

v.

Masayuki YAMAMOTO, Stanley Ito, William Sidell, United Brotherhood of Carpenters and Joiners of America, Local 745, AFL–CIO, and United Brotherhood of Carpenters and Joiners of America, Defendants-Appellants.

Ray MARSHALL, Secretary of Labor, United States Department of Labor, Plaintiff-Appellee,

v.

LOCAL UNION NO. 745, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL–CIO, Defendant-Appellee

and

Walter H. Kupau et al., Applicants for Intervention, Appellants.

Ray MARSHALL, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

LOCAL UNION NO. 745, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL–CIO, Defendant-Appellant,

and

Walter H. Kupau et al., Applicants for Intervention, Appellees.

Nos. 78–2915, 79–4056 and 79–4354.

United States Court of Appeals, Ninth Circuit.

June 30, 1980.

Benjamin C. Sigal, Honolulu, Hawaii, for Yamamoto.

Victor J. Van Bourg, San Francisco, Cal., for Local Union.

Herbert Takahashi, Honolulu, Hawaii, for Kupau.

Beate Bloch, Washington, D.C., for Department of Labor.

Before MERRILL, ANDERSON and SCHROEDER, Circuit Judges.

SCHROEDER, Circuit Judge:

These consolidated appeals arise out of a union election and the disputed candidacy of an insurgent union member, Mr. Kupau, in his challenge of the incumbent leadership of the United Brotherhood of Carpenters and Joiners of America, Local 745. The appeals raise significant questions concerning the remedies provided under Title I and Title IV of the Labor Management Reporting and Disclosure Act (LMRDA). 29 U.S.C. §§ 401 *et seq.*

Although the union originally permitted Kupau to run for office, the union declared, after he had apparently won the election, that he was ineligible. It refused to install him as Financial Secretary-Business Representative. We hold that Kupau properly invoked the district court's jurisdiction under Title I of the LMRDA. Title I guarantees equal voting and nominating rights to union members in union elections and permits a private civil action for relief, including injunctive relief. 29 U.S.C. §§ 411(a)(1), 412. In appeal No. 78–2915 we affirm the district court's award of a preliminary injunction compelling Kupau's in-

stallation as a union officer. *See Kupau v. Yamamoto*, 455 F.Supp. 1084 (D. Haw. 1978).

■ After the injunction was entered the Secretary of Labor filed the complaint in *Marshall v. Local Union No. 745*, on behalf of Kupau's opponent, the incumbent Stanley Ito under Title IV of the LMRDA. Kupau appeals in No. 79–4056, from the denial of his motion to intervene in the Title IV litigation. This Court has treated such an order as appealable, *see Brennan v. Silvergate Dist. Lodge No. 50, International Ass'n of Machinists*, 503 F.2d 800 (9th Cir. 1974), and the case is properly before us. We hold that the Title IV actions should be dismissed.[1]

*Background*

Appellees Gordon Yanagawa and Robert Oyadomari nominated Kupau for the office of Financial Secretary-Business Representative of the Local. Kupau's principal opponent in the election, the incumbent Ito, received the support of the union's other incumbent officers who ran for office on the same slate with Ito.

The union constitution and bylaws required each candidate for office to be "working at or depending on the trade for a livelihood." The union established an election committee of rank and file members to determine the eligibility of the nominees. Because Kupau was at the time working as a project manager of a housing development and not working with carpentry tools, the committee originally questioned his eligibility. Upon consideration of additional materials describing Kupau's duties and responsibilities, however, the committee concluded that Kupau was eligible.

Among the materials considered by the committee was a letter from Mr. Sidell, the international union's General President in Washington, D.C., concluding that an indi-

vidual with duties and responsibilities similar to Kupau's would be eligible to run for office. Sidell's advisory ruling had been solicited by Kupau's supporters who desired official assurance that Kupau would be permitted to run. The Kupau supporters testified that, if Sidell had ruled otherwise, they would have nominated someone else to run against the incumbent candidate. No further questions concerning Kupau's eligibility surfaced prior to the election. In an article prepared prior to announcement of the election results, Kupau's opponent, Ito, wrote in the union newspaper that the election had been conducted fairly.

Kupau defeated Ito by a narrow margin and a third candidate finished far behind. After the election, however, Ito filed a protest with General President Sidell charging that Kupau had been ineligible under the union's working at the trade requirement. Sidell requested a statement of the Local's position on the question. Without notifying Kupau or soliciting information from the election committee originally responsible for this type of eligibility decision, the union permitted Ito himself to do much of the union's investigation. The union then convened a meeting of the Local's executive board. In a departure from customary practice, the union leadership did not invite unit officers representing the rank and file membership to attend this meeting. Six of the eight individuals present at this closed session had run in the election on the common slate of incumbent candidates. General President Sidell adopted the board's conclusion that Kupau had been ineligible to run for union office and the union refused to install him.

Kupau and his supporters filed a complaint in district court, *Kupau v. Yamamoto*, alleging a violation of Title I of the LMRDA and seeking an injunctive order requiring Kupau's installation as Financial

---

1. Appeal No. 79–4354 is an attempted appeal by the union from a stay ordered in the Title IV litigation pending resolution of the appeal challenging the denial of Kupau's attempt to intervene in that proceeding. The stay order is not a final judgment under 28 U.S.C. § 1291 and is therefore not an appealable order. *See Fugate v. Morton*, 510 F.2d 307 (9th Cir. 1975), *cert. denied*, 422 U.S. 1045, 95 S.Ct. 2665, 45 L.Ed.2d 697 (1975).

Secretary.[2] The district court heard extensive testimony and concluded that Kupau had made a sufficient showing of a denial of Title I equal voting rights to permit a private action. The trial court further concluded that Kupau was likely to prevail on the merits and issued a preliminary injunction ordering his installation. Appellants now challenge the award of preliminary injunctive relief. This Court has previously denied a stay of that injunction pending appeal.

Shortly after the appeal was taken from the trial court's decision, Ito filed a complaint with the Secretary of Labor under Title IV of the LMRDA challenging Kupau's eligibility. Following an investigation, the Secretary determined that there was probable cause to believe that Kupau's installation would violate Title IV. The Secretary filed an independent suit in district court against the union pursuant to 29 U.S.C. § 482, *Marshall v. Local Union No. 745*. The Secretary and the union, adversaries only nominally, sought to enter a consent decree in the Title IV action setting aside Kupau's election and providing for a new election between Ito and the third candidate. Kupau moved to intervene in that action, and the trial court's denial of that motion is now appealed.

The issues before us can be summarized as follows:

1. Did the trial court have jurisdiction to entertain Kupau's action under Title I of the LMRDA?

2. If so, does the record support the granting of a preliminary injunction?

3. What is the proper status of the complaint filed by the Secretary of Labor purportedly pursuant to Title IV of the LMRDA?

*The District Court's Jurisdiction Under Title I*

The underlying dispute in all of these appeals concerns a union election and the right of a union member to run for office.

**2.** Kupau also unsuccessfully sought relief by filing a complaint with the Secretary of Labor pursuant to Title IV.

Both Title I and Title IV address matters involving union elections. Title I, denominated a Bill of Rights, guarantees, in 29 U.S.C. § 411(a)(1), "equal rights and privileges" to nominate and vote for candidates. Title IV, 29 U.S.C. §§ 481 *et seq.*, regulates the conduct of union elections in some detail. Title I is enforceable in district court by a private action of the aggrieved union member. 29 U.S.C. § 412. Enforcement of Title IV rests with the Secretary of Labor who screens union members' grievances and files suit against the union in federal district court if a grievance has merit. 29 U.S.C. § 482. In light of the sharp contrast between the remedies provided by Title I and Title IV, the existence or lack of Title I jurisdiction is critical and at the core of these consolidated appeals.

■ We must initially determine whether the Kupau complaint in district court stated a claim for relief under Title I, and specifically, § 411(a)(1). In guaranteeing equal nominating and voting rights, that section does not provide a remedy for all claimed injustices or irregularities in union elections. Rather, § 411(a)(1) protects only the equal rights of union members to engage in certain union activities, including nominations and voting. *Calhoon v. Harvey*, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964). In the absence of a claim of discrimination by the union against the union member, a federal district court lacks jurisdiction to award relief for an alleged violation of § 411(a)(1).

Kupau's claim of discrimination in this case centers on the union's post-election reversal of its preelection determination that he was eligible. The Kupau group contends that this allegedly inconsistent and uneven application of the eligibility requirement resulted in a denial of their equal right to nominate and vote under Title I. Moreover, Kupau's ineligibility was not declared until after the election, and the union proposed a new election between Ito and the candidate who originally finished a distant

third. As a result, the Kupau group contends that it was denied the opportunity to nominate anyone else to run against the incumbent candidate. Kupau urges that by its about-face on his eligibility the union in effect disenfranchised a majority of the union's electorate who voted in the election of a Financial Secretary.

The union and the Department of Labor, as amicus curiae in the Kupau action, rely upon *Calhoon v. Harvey, supra.* They argue that the district court lacked jurisdiction under Title I. In *Calhoon* the United States Supreme Court held that a union member could challenge an eligibility requirement as too restrictive by filing a complaint with the Secretary under Title IV, but not by filing a private action pursuant to Title I. Although Justice Stewart indicated in his special concurrence that restrictive qualifications for union office pose as great a threat to union democracy as other forms of unfair treatment, *Calhoon* remains the law and excludes claims of overly restrictive qualifications from the scope of Title I.

The union and the Secretary characterize the instant suit as one essentially concerning eligibility and thus similar to *Calhoon.* That simplistic characterization, however, ignores an essential distinction between this case and *Calhoon. Calhoon* involved eligibility qualifications which, although allegedly restrictive, had been evenly applied to all members of the union.

As the Supreme Court pointed out in *Calhoon*:

> The complaining union members here have not been discriminated against in any way and have been denied no privilege or right to vote or nominate which the union has granted to others. . . .
> It is true that they were denied their request to be candidates, but that denial was not a discrimination against their right to nominate, since the same qualifications were required equally of all members. 379 U.S. at 139, 85 S.Ct. at 295–96.

█ In this case, the plaintiffs complained of the uneven application of eligibility qualifications, and it is that element of discrimination which brings this case within the scope of Title I.[3] Unlike the plaintiffs in *Calhoon,* therefore, the plaintiffs in the Kupau litigation did state a violation of Title I.

█ Even though the plaintiffs alleged a violation of Title I, the union maintains that Title I relief is preempted by the existence of claimed violations of Title IV. *Driscoll v. Operating Engineers Local 139,* 484 F.2d 682 (7th Cir. 1973), *cert. denied,* 415 U.S. 960, 94 S.Ct. 1490, 39 L.Ed.2d 575 (1974), offers some support for that view. In *Driscoll* the union member framed his challenge of a restriction on candidacy in terms of Title I. Relying upon *Calhoon,* the Seventh Circuit concluded that his allegations "basically relate[d]" to eligibility and that the availability of the Title IV remedy precluded relief under Title I. Although this result may be suggested by the Supreme Court's emphasis in *Calhoon* upon the avoidance of disruptive suits and reliance upon the expertise of the Secretary, preemption was not contemplated in that decision. Though the language of *Calhoon* is not precise, the opinion sought to contrast challenges to the eligibility rules themselves and challenges to the application of those rules. Disputes over the propriety of eligibility rules, the Court held, present only a Title IV basis for relief. However, where the allegation is that the eligibility rules have been applied discriminatorily, such that § 101(a)(1) rights have been violated, then a Title I action is presented. The fact that the dispute may ultimately determine the eligibility of a particular candidate does not cause a Title I claim to be preempted by Title IV.

Other courts and commentators have been critical of a result that preempts Title I remedies by the existence of claimed vio-

---

3. For unfair labor practice decisions condemning selective, uneven application of rules as illegal discrimination, *see, e. g., N. L. R. B. v. Laborers' International Union Local 300,* 613 F.2d 203 (9th Cir. 1980); *Construction, Bldg. Materials & Misc. Drivers Local 83 v. N. L. R. B.,* 590 F.2d 316 (9th Cir. 1979).

lations of Title IV, pointing out that remedies under Title IV are inherently time consuming, that the aggrieved union member has no control over the litigation once the complaint is filed by the Secretary, and that immediate redress is impossible since the winner of the election remains in office pending resolution of the Title IV proceedings. *See,* Comment, Titles I and IV of the LMRDA: A Resolution of the Conflict of Remedies, 42 U.Chi.L.Rev. 166 (1974); Note, Pre-election Remedies Under the Landrum-Griffin Act: The "Twilight Zone" Between Election Rights Under Title IV and the Guarantees of Titles I and V, 74 Colum.L.Rev. 1105 (1974); Note, Union Elections and the LMRDA: Thirteen Years of Use and Abuse, 81 Yale L.J. 407 (1972); James, Union Democracy and the LMRDA: Autocracy and Insurgency in National Union Elections, 13 Harv.Civ.Rgts.-Civ.Lib.L. Rev. 247 (1978).

■ Total preemption of Title I relief by Title IV in the area of elections is belied by the legislative history of the LMRDA. Title IV had been drafted, discussed, and approved before Title I was even proposed. Congress added Title I at least partly in response to fears that Title IV was not strong enough to effectuate the central purpose of the LMRDA, the preservation of union democracy. *See* Note, *supra,* 42 U.Chi.L.Rev. at 175–79, and citations therein.

Recognizing the importance of prompt, direct action in providing relief from union election practices which undermine the equal rights of union members, several courts have permitted suits under Title I without specific analysis of the relation between Title I remedies and Title IV remedies. *Bunz v. Moving Picture Machine Operators Local 224,* 567 F.2d 1117 (D.C.Cir. 1977); *Pignotti v. Local # 3 Sheet Metal Workers International Ass'n,* 343 F.Supp. 236 (D.Neb.1972), *aff'd,* 477 F.2d 825 (8th Cir.), *cert. denied,* 414 U.S. 1067, 94 S.Ct. 576, 38 L.Ed.2d 472 (1973); *Stettner v. International Printing Pressmen,* 278 F.Supp. 675 (E.D.Tenn.1967). In each of these cases the court upheld relief under Title I despite the fact that the plaintiffs could have sought some relief pursuant to Title IV.

■ We believe that the better view of the relationship between Title I and Title IV remedies is that espoused in *Depew v. Edmiston,* 386 F.2d 710 (3d Cir. 1967), where the court held that the crucial inquiry is whether a union member has been discriminated against in the exercise of his Title I rights. If so, then "regardless of other claims" his Title I cause of action is not preempted by the existence of Title IV claims. 386 F.2d at 712.

■ The reasoning in *Depew* would appear to apply regardless of whether an action is brought before or after balloting takes place. Because the alleged violation in *Depew* actually arose and suit was filed before the election, the union in this case distinguishes that decision and emphasizes the language of 29 U.S.C. § 483 which states that "the remedies provided by this subchapter for challenging an election already conducted shall be exclusive." The union contends that § 483 should have precluded Kupau's post-election attempt to seek Title I relief. We do not agree, however, that § 483 precludes relief to a union member with a valid Title I claim, particularly when the claim did not ripen until after the election had been conducted, and no pre-election suit was possible.

On its face, § 483 does not state that the remedies under Title IV shall be exclusive for post-election challenges brought under any provision of the LMRDA. It would appear to refer only to violations of Title IV. In *Calhoon* the Supreme Court described the Title IV remedy as the "exclusive method for protecting Title IV rights," 379 U.S. at 140, 85 S.Ct. at 296, but it did not hold that Title IV was the exclusive method for protecting all LMRDA rights. Moreover, it is difficult to reconcile a total post-election preemption by Title IV with the legislative history which, as noted above, reveals that Title I was added to the Act to enlarge the rights of union members.

■ In light of our holding that the mere existence of Title IV violations should

not preclude relief under Title I, it would make little practical sense to permit pre-election challenges under Title I but prohibit all post-election relief. The facts here demonstrate the importance of post-election Title I relief in certain cases. The Kupau group's Title I claim rests upon the alleged inconsistency between the union's conduct before and after the election. It was asserted when the union changed its position and refused to install Kupau. If the union's action violated Title I equal rights, the plaintiffs should not be denied the relief provided by Congress merely because the union's leadership waited until after the balloting to take action effectively disenfranchising a majority of the electorate. We thus conclude that the fact that balloting has already taken place does not bar the invocation of the district court's jurisdiction under Title I in that narrow class of cases in which the member can establish discrimination as required by the decision in *Calhoon v. Harvey.* Language in *Dunlop v. Bachowski,* 421 U.S. 560, 566, 95 S.Ct. 1851, 1857, 44 L.Ed.2d 377 (1975), suggests that Title I relates only to pre-election conduct. It is difficult to take such a suggestion literally since Title I relates expressly to voting, which is not pre-election conduct. In any event, the alleged discriminatory conduct here certainly encompasses the union's pre-election action declaring Kupau's eligibility.

Our conclusion in this regard is not inconsistent with this Court's decision in *Davis v. Turner,* 395 F.2d 671 (9th Cir.), *cert. denied,* 393 U.S. 987, 89 S.Ct. 467, 21 L.Ed.2d 449 (1968). The Court there held only that a union member's complaint should have been pursued under Title IV rather than Title I because it did not state a violation of Title I. The court went on to state in dictum that, even if the claim could have been the basis for a Title I action, the plaintiff lost that remedy when the election was conducted. The plaintiff in *Davis v. Turner* challenged the union's pre-election removal of his name from the ballot, but did not file suit until after the election had been completed. In sharp contrast to that factual setting, however, the Kupau supporters had

no way of knowing prior to the balloting that the effectiveness of their votes would later be negated. They could only assert their Title I rights after the election.

In that respect this case is similar to *Bunz v. Moving Picture Machine Operators Local 224, supra, Pignotti v. Local # 3 Sheet Metal Workers International Ass'n, supra,* and *Stettner v. International Printing Pressmen, supra.* In *Bunz,* for example, the court applied Title I in condemning a union's post-election attempt to change the percentage of votes necessary to defeat a certain proposal supported by the existing union leadership. In *Pignotti* the district court stated that the union's refusal to implement a properly conducted vote "denied the plaintiff his § 411 right to vote as effectively as if they had stuffed the ballot box itself . . . ." 343 F.Supp. at 243. In *Stettner* the court concluded that irregularities in the counting of ballots discriminated against the plaintiffs. In those cases, as here, the plaintiffs were denied equal voting rights after the balloting had begun and had no possible remedy under Title I prior to the election. Although without specifically analyzing § 483, the courts in those cases allowed post-election Title I relief. The *Bunz* court concluded that "[e]vidently, the equal right to vote may be denied upon the occurrence of serious discrimination . . . at any stage of the electoral process." 567 F.2d at 1122.

Cases cited to us as support for the proposition that § 483 should bar Title I relief in this case are generally inapposite. Some courts have concluded that Title IV, and not Title I, was violated in a particular case and that § 483 provided the exclusive post-election remedy. *See, e. g., McGuire v. Grand International Division of the Brotherhood of Locomotive Engineers,* 426 F.2d 504 (6th Cir. 1970); *Local 115, United Brotherhood of Carpenters v. United Brotherhood of Carpenters,* 247 F.Supp. 660 (D.Conn.1965). Others have denied post-election Title I claims in cases in which the allegedly wrongful conduct occurred prior to the election but the union member chose to allow the election to be conducted before seeking Title I relief. *See, e. g., Kempthorne v.*

United Transportation Union, 457 F.2d 551 (7th Cir. 1972); *Venet v. Local No. 606, United Brotherhood of Carpenters,* 342 F.Supp. 819 (D.Minn.1972). In none of these cases was post-election relief denied when a valid Title I claim first arose after the election and could not have been pursued prior to the election. We know of only one holding inconsistent with the result reached here, *McDonough v. Local 825, International Union of Operating Engineers,* 470 F.2d 261 (3d Cir. 1972), which we decline to follow.

*The Propriety of the Preliminary Injunction*

█ We review an award of a preliminary injunction under the standards announced in *Benda v. Grand Lodge of International Ass'n of Machinists,* 584 F.2d 308 (9th Cir. 1978), *cert. dismissed,* 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979). If the district court applied the proper legal standard in awarding the preliminary injunction, its decision will not be reversed on appeal in the absence of an abuse of discretion. The standard to be applied by the district court is discussed in *Wm. Inglis & Sons Baking Co. v. ITT Continental Baking Co.,* 526 F.2d 86, 88 (9th Cir. 1975):

> One moving for a preliminary injunction assumes the burden of demonstrating either a combination of probable success and the possibility of irreparable injury or that serious questions are raised and the balance of hardship tips sharply in his favor.

█ The district court applied the proper standard in this case and expressly concluded that the Kupau group faced the possibility of suffering irreparable injury and would likely succeed at trial on the merits of the Title I complaint.

In analyzing the possibility of irreparable injury the district court properly rejected the union's suggestion that, should Kupau ultimately prevail, he could be fully compensated by an award of lost wages. More than Kupau's salary was at stake in this case. The district court did not abuse its discretion in determining that a perpetuation of the union's refusal to install the duly elected candidate would deny him the opportunity to serve and seriously harm Kupau, his nominators, and the union membership which elected him to the most powerful office of Local 745.

Nor did the district court err in appraising the plaintiffs' likelihood of success on the merits. In defending its post-election change of heart on Kupau's eligibility, the union maintains that the election committee did not originally have sufficient information concerning Kupau's job responsibilities to make an accurate ruling on his compliance with the working at the trade requirement. The union also claims that General President Sidell lacked sufficient factual information to issue a binding advisory ruling on this question. The trial court heard extensive testimony on these matters before awarding injunctive relief. The court heard evidence specifically directed to the materials provided to both the election committee and Sidell and the union's contention that further materials should have been considered. The district court did not abuse its discretion in concluding that the plaintiffs had a strong chance of successfully proving at trial that this sequence of events constituted the type of uneven, discriminatory application of an eligibility requirement sufficient to violate the guarantees of Title I. *See Calhoon v. Harvey, supra.*

*The Status of the Secretary's Title IV Suit*

The Title IV suit filed in district court by the Secretary of Labor, *Marshall v. Local Union No. 745,* is based upon Ito's claim that Kupau was ineligible to run for office. We first consider the jurisdictional question of whether there was any proper statutory basis for that suit.

Following the election and ballot count when Kupau appeared the winner, we assume that Ito had a good faith grievance concerning Kupau's eligibility. Title IV provides that the aggrieved union member must exhaust union remedies before invoking the assistance of the Secretary of Labor. 29 U.S.C. § 482. The statute thus contemplates that, following unsuccessful exhaustion of remedies, the member may seek the assistance of the Secretary of Labor to compel the union, by court action if necessary, to take action which will provide relief to the aggrieved union member.

In this case, when the Title IV complainant, Ito, invoked his internal remedies prior to going to the Secretary of Labor, he was successful in obtaining from the union exactly the relief he desired. At that point, after the union had declared Kupau ineligible, Ito was no longer aggrieved by any union action at all. It was only after Kupau sought and gained injunctive relief from the district court under Title I that Ito sought the assistance of the Secretary of Labor. Thus, the Secretary of Labor's Title IV suit is in reality a challenge not to the stance of the union, with which the Secretary is in total agreement, but to the injunction entered by the district court.

We conclude that use of the Title IV procedure by the Secretary of Labor in these circumstances was improper. Section 482 provides a remedy through the Secretary after efforts to obtain relief from the union have been unsuccessful. It is premised on the existence of a genuine dispute between the aggrieved union member and the union. In this case, although Ito had sought and gained the relief he desired from the union, Kupau was installed into office by the injunctive order of the district court. As a result, Ito was, in effect, denied the relief granted by the union. However, the injunctive order did not thereby create a dispute between Ito and the union as contemplated by the provisions of § 482. The "dispute" that had arisen was between Ito and the district court. Such a situation does not allow the Secretary of Labor to proceed under § 482 to seek relief against a union. There was here thus no basis for Ito to complain to the Secretary about the union's position, and no adversary relationship whatsoever between the Secretary and the union.

The Secretary relies on this Circuit's decision in *Brennan v. Silvergate District Lodge No. 50, International Ass'n of Machinists*, 503 F.2d 800 (9th Cir. 1974), for the proposition that a purely collusive and non-adversarial suit by the Secretary against the union is appropriate under Title IV. In *Silvergate*, however, unlike this case, the union had refused to grant the relief sought by the aggrieved member through internal remedies, and had refused to adjust the matter with the Secretary prior to the institution of the suit. It was only after a change in management during the pendency of the suit that the union and the Secretary reached a settlement. In *Silvergate* the Court upheld the right of the union and the Secretary to reach a settlement of what was at its inception a bitter dispute between the union and the Title IV complainant. Here, the Secretary's suit was no more than an attempt to subvert the injunctive relief granted in Title I proceedings in which Ito and the union were fully represented.

Accordingly, we hold that the district court lacked jurisdiction under Title IV to consider a complaint filed by the Secretary to compel the union to take the very action which prompted Kupau's Title I suit in the first instance. Since we conclude that the Secretary of Labor's complaint should have been dismissed, we need not consider the denial of Kupau's motion to intervene in that case.

The judgment of the district court in *Kupau v. Yamamoto* is affirmed. *Marshall v. Local Union No. 745* is remanded to the trial court with instructions to dismiss the Title IV action.