707 F.2d 443
 113 L.R.R.M. (BNA) 3003, 97 Lab.Cas. P 10,191
 Frank CANEZ, Gustavo Gutierrez, Ramon Mesa and Cruz Estrell,
Individuals/on Behalf of all Members of Local 383,
Plaintiffs-Appellees,
v.
Edward GUERRERO, et al., Defendants,
Laborers' International Union of North America, AFL-CIO, and
its affiliated Local 383, Defendants-Appellants.
 No. 82-5658.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 12, 1983.
Decided June 3, 1983.
 
 Orrin D. Baird, Connerton & Bernstein, Washington, D.C., for plaintiffs-appellees.
 John Aguirre, Treon, Warnicke & Roush, P.A., Phoenix, Ariz., for defendants-appellants.
 Appeal from the United States District Court for the District of Arizona.
 Before MERRILL, SNEED, and FARRIS, Circuit Judges.
 SNEED, Circuit Judge:
 
 
 1
 This appeal arises out of a court-supervised union election held on June 6, 1981. Appellants, the Laborers Union of North America (AFL-CIO) and Local 383, challenge two injunctions issued by the district court. Appellees are members of a dissident group that lost the election. We do not reach the merits of appellants' claims because we are compelled to dismiss their case as moot.
 
 I.
 THE INJUNCTIONS
 
 2
 On May 28, 1981, the dissidents applied to the district court for a temporary restraining order and a preliminary injunction, asking for various relief to allow them to complete their campaign without intimidation. The district court held hearings on June 3 and 4. At these hearings the dissidents presented considerable evidence of violence directed at opponents of the incumbent officers. They also alleged that appellants had disadvantaged opposition candidates by manipulating campaign literature and election notices, ballot listings, the timing of elections, and the location of voting places. On this basis they asked the court to delay the election and administer future election procedures to protect their rights under the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. Secs. 401-531.
 
 
 3
 The court did not hear appellants' answer to these allegations. On June 5, one day after the second day of hearings and one day before the election, the court faced the choice of ordering a supervised election or, as the dissidents preferred, delaying the election until the hearings could be completed. Appellants, although objecting that the court had no jurisdiction to intervene, asked for the supervised election as the lesser of two evils. The court agreed and issued an injunction setting forth procedures to be followed in the election.
 
 
 4
 The terms of the injunction are critical to the disposition of this case. The court established two additional voting places and extended voting hours. It required the union to mail a notice with the new dates, times, and addresses of voting places to all members. The union was also forced to hire the American Arbitration Association (AAA) to conduct the election. The AAA was authorized to handle the membership roster and election materials, count the ballots, and submit all documents to the district court after the election. Voters were required to present proof of membership in good standing before voting. Candidates' names were to be alternated on the official ballot to ensure randomness in listing, and no sample ballots could be distributed.
 
 
 5
 Local 383 and the International each had to provide one assistant to help carry out the election. Each slate could also designate one election "watcher." A 100-foot perimeter was established around each polling place. The union had to hire policemen or other guards to ensure that no one, including officers or incumbents, entered the perimeter except for the purpose of voting. Alcohol was not allowed within the perimeter.
 
 
 6
 The court issued a second injunction on June 16 to clarify the details of the ballot counting procedures. Appellants won the election but brought this appeal to contest both injunctions.
 
 II.
 MOOTNESS
 
 7
 Appellants contend on appeal that the district court acted without jurisdiction in ordering the injunctions. An understanding of their claim requires that the relationship between titles I and IV of the LMRDA, 29 U.S.C. Secs. 411-415, 481-483, be examined. Title I provides a guarantee that individual members and classes of members not be discriminated against in their right to participate in elections. Calhoon v. Harvey, 379 U.S. 134, 138-39, 85 S.Ct. 292, 295-96, 13 L.Ed.2d 190 (1964); Kupau v. Yamamoto, 622 F.2d 449, 455 (9th Cir.1980) ("crucial inquiry is whether a union member has been discriminated against in the exercise of his title I rights"), quoted in Rollison v. Hotel, Motel, Restaurant, and Construction Camp Employees, 677 F.2d 741, 745 (9th Cir.1982). Employees injured by violations of title I can go directly to the district court to seek "such relief (including injunctions) as may be appropriate." 29 U.S.C. Sec. 412.
 
 
 8
 Title IV, on the other hand, "sets standards for eligibility and qualifications of candidates and officials," Calhoon, 379 U.S. at 138, 85 S.Ct. at 295, and provides an exclusive, post-election administrative procedure for remedying title IV violations. 29 U.S.C. Sec. 483; see Trbovich v. UMW, 404 U.S. 528, 531, 92 S.Ct. 630, 632, 30 L.Ed.2d 686 (1972). If union members can convince the Secretary of Labor that a title IV violation occurred, he is authorized to sue in the district court to have the old election set aside and a new one conducted under his supervision. 29 U.S.C. Sec. 482(b)-(c).
 
 
 9
 Appellants' primary argument on appeal is that title IV bars the district courts from ordering a supervised election under title I. Thus, the court "exceeded its remedial authority under title I" when it "ordered broad, sweeping relief in the form of a court-supervised election, relief traditionally granted only under title IV." But cf. Kupau, 622 F.2d at 455-57 (post-election relief for pre- and post-election title I violations). The Supreme Court recently has granted certiorari to decide title IV's impact on post-election title I relief in Crowley v. Teamsters Local No. 82, 679 F.2d 978 (1st Cir.1982), cert. granted, --- U.S. ----, 103 S.Ct. 813, 74 L.Ed.2d 1012 (1983). In Crowley the First Circuit's post-election relief for pre-election[1] title I violations was a new, supervised election similar to the supervised election ordered in this case. Here pre-election relief was provided. We need not be concerned, however, with whether the Court is also likely to decide title IV's impact on pre-election title I relief.
 
 
 10
 Our appeal can be resolved more readily. Although the parties did not raise a mootness question in their briefs, mootness is an element of justiciability and the court has a duty to consider it sua sponte. Taxpayers for Vincent v. Members of City Council, 682 F.2d 847, 849 n. 1 (9th Cir.1982), prob. juris. noted, --- U.S. ----, 103 S.Ct. 1180, 75 L.Ed.2d 429 (1983). The court has no jurisdiction to hear any case in which events have occurred that prevent it from granting effective relief. Mills v. Green, 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895); In re Combined Metals Reduction Co., 557 F.2d 179, 187 (9th Cir.1977); e.g., Nakano v. United States, 698 F.2d 1059, 1060 (9th Cir.1983).
 
 
 11
 This case has been mooted by the election. The injunctions from which appellants seek relief were limited by their terms to the conduct of the election. The loss of freedom engendered in the supervised election is irreparable. Appellants suffered no other injury in the election itself because they won. Nor have they sought a refund of the added costs of paying the AAA to supervise the election. Finally, although at oral argument appellants contended that the district court retained "continuing jurisdiction" over this lawsuit, the dissidents have waived any further action if, indeed, the district court can retain jurisdiction over any part of this lawsuit.[2]
 
 
 12
 Appellants expose the real problem for which they seek relief when they suggest that the dissidents will use the district court's findings of past violence as a political weapon in future elections. The legal answer to their complaint is that interlocutory injunctive relief does not ordinarily have preclusive effect. 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure Sec. 4445 (1981 & Supp.1983). That this answer is not likely to satisfy appellants merely illustrates that what they seek is political, not legal, relief. Intervening for such a purpose is not a proper function for the courts.
 
 
 13
 Appellants also argue that we should intervene because the problem of pre-election title I relief is capable of repetition yet evading review. See Taxpayers for Vincent, 682 F.2d at 849 n. 1; Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). They argue that denying review will create an incentive for dissidents to sue just before an election and gain injunctive relief whose appropriateness is mooted by the election. The point is not compelling. Some dissident groups will win elections, hence preserving the title I question for review on appeal by losing incumbents. Others, like the dissidents here, will seek to delay the election, and if delay is granted there may also be time for appellate review. Furthermore, appellants' premise that dissident groups are likely to wait until just before an election to sue is faulty. Were the district court to refuse relief under such circumstances, there would be too little time to plan alternative strategies. Finally, we find appellants' argument unpersuasive when the Supreme Court has so recently granted certiorari in Crowley which, although involving only post-election relief, is likely to go far in resolving the general relationship between title I and title IV relief.
 
 
 14
 The appeal is dismissed as moot. This case does not warrant granting appellees attorney's fees under the common benefit doctrine as enunciated in Hall v. Cole, 412 U.S. 1, 7-9, 93 S.Ct. 1943, 1947-48, 36 L.Ed.2d 702 (1973).
 
 
 15
 DISMISSED.
 
 
 
 [1]
 In Crowley the election had been conducted but the ballots had not been counted. The First Circuit found title I applicable in part because it believed the election had not been "conducted" until the ballots were counted. 679 F.2d at 991-93
 
 
 [2]
 The district court cannot retain jurisdiction over any part of this title I appeal because the notice of appeal divests it of jurisdiction over the issues on appeal. In re Bialac, 694 F.2d 625, 627 (9th Cir.1982); In re Thorp, 655 F.2d 997, 998 (9th Cir.1981). The court did stay proceedings on a post-election title IV challenge to the election until the dissidents had exhausted their administrative appeals. Appellants apparently have nothing to fear from that appeal, because both sides have represented at oral argument that the dissidents have been denied title IV relief. There is therefore no part of this case left over which the district court could exercise jurisdiction