**Elaine L. CHAO, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**LOCAL 1357, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, Defendant.**

**No. CV01–00367 SOM/BMK.**

United States District Court, D. Hawaii.

Oct. 29, 2001.

Barbara A. Matthews (argued), U.S. Department of Labor, Office of the Regional Solicitor, San Francisco, CA, Theodore Meeker, Assistant U.S. Attorney (appeared, but did not argue), Office of the United States Attorney, Honolulu, HI, for Plaintiff.

Herbert R. Takahashi (argued), Takahashi Masui & Vasconcellos, Honolulu, HI, for Defendant.

### AMENDED ORDER DENYING DEFENDANT'S MOTION TO DISMISS

MOLLWAY, District Judge.

## I. *INTRODUCTION.*

The Secretary of Labor (the "Secretary") sued Defendant Local 1357, Interna-

tional Brotherhood of Electrical Workers, AFL–CIO ("Local 1357"), under Title IV of the Labor Management Reporting and Disclosure Act of 1959 (Act of September 14, 1959, 73 Stat. 519 *et seq.*, 29 U.S.C. §§ 481 *et seq.*, hereinafter the "LMRDA"). Local 1357 moves to dismiss the complaint on the grounds of failure to exhaust internal remedies, mootness, and res judicata. This court DENIES Defendant's motion to dismiss.

## II. *BACKGROUND.*

On February 16, 2001, Local 1357 held an election for its officers (the "election"). A notice of nominations and the election was issued to the members of Local 1357 in November, 2000, and nominations were held at unit meetings in December, 2000. At the Unit 8 meeting held on December 12, 2000, Joseph Kim nominated George Waialeale for the office of Business Manager–Financial Secretary. Waialeale was opposed for the office by Harold Dias. On December 28, 2000, an election judge was appointed to conduct the election and to review the candidates' eligibility for each of the offices for which they had been nominated. That same day, the election judge was informed that the International Brotherhood of Electrical Workers (the "IBEW"), had deemed Waialeale ineligible to run for the office of business manager because Waialeale had, while serving as a prior business manager of the union, made allegedly improper expenditures of union funds in the amount of $80,499.92. Based on a December 20, 2000, letter from the IBEW, Waialeale's name was excluded from the election ballot. The election results were certified on February 16, 2001, and the newly elected officers of Local 1357 were installed on March 2, 2001.

On January 23, 2001, Waialeale sued Local 1357 and the IBEW in this court under Title I of the LMRDA ("Title I"), alleging that he had been improperly disciplined and disqualified by Local 1357 and the IBEW without specific written charges, in violation of 29 U.S.C. § 401(a)(5). This court denied his request for a temporary restraining order prohibiting the issuing and mailing of the ballots and the holding of the election unless his name was included on the ballot. This court held that, because he had not shown that he had exhausted his union remedies in challenging Local 1357's refusal to put his name on the ballot, he had failed to establish a likelihood of success on the merits. *See* Order Denying Plaintiff's Motion for Temporary Restraining Order in *Waialeale v. International Brotherhood of Electrical Workers,* CV01–00064 SOM/BMK (Jan. 30, 2001) at 11. On April 6, 2001, this court dismissed Waialeale's complaint with prejudice as to all claims and all parties after Waialeale, Local 1357, and the IBEW agreed to settle the case. *See* Stipulation for Dismissal with Prejudice as to All Claims and Parties and Order in *Waialeale v. International Brotherhood of Electrical Workers,* CV01–00064 SOM/BMK (Apr. 6, 2001). Under the terms of the settlement agreement, Waialeale agreed not to run for any union office in the IBEW or Local 1357 until after January 1, 2008. In exchange, the IBEW and Local 1357 waived their claim for reimbursement of the alleged improper expenditures of union funds.

On March 13, 2001, Joseph Kim wrote a letter (the "Kim letter") to Michael Mowrey, International Vice President of the IBEW, complaining that Waialeale's disqualification after the close of nominations had deprived union members of a "choice or opportunity to vote for anyone else beside [sic] Business Manager Dias" and asking that "a new election be held immediately for Business Manager–Financial Secretary with new nominations." Kim did not address or send the letter to Local 1357 or the election judge. On March 23, 2001, Mowrey informed Kim that he found "no basis for [Kim's] complaint" and "no

reason for a new election." Kim did not appeal from Mowrey's decision, but, on April 5, 2001, Kim filed a complaint with the Department of Labor (the "Department") alleging that, because of the timing of Waialeale's disqualification, members of Local 1357 were not given a choice in the election for business manager. The election judge informed the Department that Kim's election protest had not been submitted to Local 1357 and that there had been no proper exhaustion of internal union remedies. Kim withdrew his complaint on April 25, 2001, but the Department continued its investigation, indicating that, under Department policy, "an election protest filed with the Secretary of Labor, or any specific allegation therein, may not be withdrawn from [Office of Labor Management Standards] consideration by the complainant for any reason."

On May 22, 2001, the Department notified Local 1357 and the IBEW of its findings that "[t]he union failed to provide a reasonable opportunity for candidates to be nominated when it improperly disqualified an otherwise eligible candidate in violation of Section 401(d) of the LMRDA." On June 4, 2001, the Secretary sued Local 1357 in this court under Title IV of the LMRDA ("Title IV"), alleging that Local 1357 had violated section 401(e) of the LMRDA, 29 U.S.C. § 481(e), by disqualifying a member in good standing as a candidate for office on the basis of union discipline imposed in violation of section 101(a)(5) of the LMRDA, 29 U.S.C. § 411(a)(5). The Secretary seeks to declare Local 1357's election for the office of Business Manager–Financial Secretary null and void and to require a new election under the Secretary's supervision.

## III. *STANDARD OF REVIEW.*

■■■ A Rule 12(b)(1) attack on the court's subject matter jurisdiction may be either facial or factual. *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir.2000) (citing 2

James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.30[4], at 12–38 to 12 41 (3d ed.1999)). Local 1357 does not contest the sufficiency of the Secretary's allegations, but rather attacks the factual existence of subject matter jurisdiction. In evaluating this motion, the court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment, and the court need not presume the truthfulness of the plaintiff's allegations. *White v. Lee,* 227 F.3d at 1242 (citations omitted). The Secretary has the burden of proving this court has actual subject matter jurisdiction. *See Thompson v. McCombe,* 99 F.3d 352, 353 (9th Cir.1996) ("A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction").

## IV. *ANALYSIS.*

The LMRDA was the first major attempt by Congress to regulate the internal affairs of labor unions. Title I provides union members with a statutory "Bill of Rights" that protects, among other things, their rights to vote and participate in union decisions, and their rights to be free from improper discipline and unreasonable restrictions on speech and assembly. Title I allows union members to seek appropriate remedies in district court for violations of these rights. Title IV, by contrast, creates a statutory scheme governing the election of union officers and provides a post-election procedure aimed at protecting union democracy through free and democratic elections. Primary enforcement responsibility under Title IV rests with the Secretary.

■■■ The Supreme Court has cautioned against a literal reading of the LMRDA and has indicated that its proper construction requires consideration of its wording against the background of its legislative history and the general objectives Con-

gress sought to achieve. *See Wirtz v. Local 153, Glass Bottle Blowers Ass'n,* 389 U.S. 463, 468, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968). The court considers this motion involving the interplay of Title I and Title IV with this admonition in mind. *See Local No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousemen & Packers v. Crowley,* 467 U.S. 526, 549, 104 S.Ct. 2557, 81 L.Ed.2d 457 (1984) ("this admonition applies with its greatest force to the interaction between Title I and Title IV").

### A. Exhaustion of Internal Union Remedies.

█ Procedurally and substantively, Kim exhausted internal union remedies, as required by Title IV. Title IV provides:

A member of a labor organization (1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or (2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation, may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 481 of this title. . . .

29 U.S.C. § 482(a). The Secretary shall investigate such complaint and may, within 60 days after the filing of the complaint, sue the labor organization in federal district court to set aside an election and direct the conduct of a new election if the Secretary has found probable cause to believe that a violation of Title IV has oc-

curred and not been remedied. *See* 29 U.S.C. § 482(b). A complaint filed with the Secretary is the exclusive means of resolving disputes governed by Title IV. 29 U.S.C. § 483; *Casumpang v. Int'l Longshoremen's & Warehousemen's Union,* 269 F.3d 1042, 1056 (9th Cir.2001)(citing 29 U.S.C. § 483).

█ Title IV provides the Secretary with the exclusive power to challenge in federal district court an election already conducted. 29 U.S.C. § 482(b); 29 U.S.C. § 483. Suit by the Secretary under Title IV is the exclusive post-election remedy for challenging an election. This exclusivity (1) protects unions from frivolous litigation and unnecessary judicial interference with their elections, and (2) centralizes in a single proceeding such litigation as might be warranted with respect to a single election. *Crowley,* 467 U.S. at 549, 104 S.Ct. 2557 (citing *Trbovich v. Mine Workers,* 404 U.S. 528, 532, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972)). Exclusive post-election enforcement by the Secretary thus serves to eliminate frivolous complaints and consolidate meritorious ones. *Crowley,* 467 U.S. at 549, 104 S.Ct. 2557 (citing *Trbovich,* 404 U.S. at 535, 92 S.Ct. 630).

█ Kim properly exhausted union remedies for his election protest as delineated in the section of the IBEW Basic Laws & Policies (the "Basic Laws") covering election protests.[1] The Basic Laws, in a section titled "Protest of Election," plainly state that post-election protests are to be filed directly with the International Vice President (the "IVP") within 30 days after the election judge certifies the results.[2]

---

1. It is unclear whether the IBEW intended for its Constitution or Basic Laws to take priority. However, in "A Message from the International President" prefacing the Basic Laws, the International President indicates that the Basic Laws reflect changes to the Constitution.

2. The relevant provision states:

**Protest of Election.** Any member, including a defeated candidate, may challenge an election by filing a written protest with the appropriate International Vice President. Prior to the election, protests should be first filed with the election judge if one has been appointed and then with the International Vice President. Protests after the election shall be filed within 30 days of the certifica-

Local 1357 argues that the Basic Laws required Kim to file a protest with the election judge before going to the IVP. This reading of the Basic Laws is plainly wrong. According to the Basic Laws, a protest must first be filed with the election judge only if the protest is filed before an election. Kim properly filed a post-election protest with Mowrey, the IVP, alleging a deprivation of choice of candidate, within 30 days of the certification of the election results. Mowrey's March 23, 2001, denial of Kim's protest allowed Kim, under the Basic Laws, to file a complaint with the Secretary.

Local 1357 contends that the proper procedures for election protests are governed by some combination of the Basic Laws and Article XXV, section 12, of the IBEW Constitution ("section 12"). Local 1357 offers no justification for this combined reading, however, and it is unclear why Article XXV should apply at all. Article XXV is part of the "Misconduct, Offenses and Penalties" portion of the IBEW Constitution and appears to govern instances of individual misconduct by union members, officers, or representatives. It does not appear to govern election protests in any way, and its only connection with elections appears to be a provision making it an offense to commit voting fraud, and provisions allowing the distribution of sample ballots and official publications listing candidates' activities and experience.

Local 1357 contends, however, that section 12 required Kim to file a copy of his letter with the union. Given the general inapplicability of Article XXV to election protests, it does not appear that section 12, which covers "Appeals" under Article XXV, applies to Kim's actions. Nor was the Kim letter even an appeal, as Kim's letter to Mowrey constituted Kim's first protest of the election, in accordance with the Basic Laws.

Even if section 12 does apply to election protests, it contains provisions that differ from the Basic Laws, and Local 1357 offers the court no guidance on how they are to be reconciled. For example, the Basic Laws allow a union member 30 days to file an election protest, while section 12 allows 45 days to file an appeal. Local 1357 appears to contend that the 30–day deadline specified in the Basic Laws governs, instead of the 45–day deadline specified in section 12. *See* Def.'s Mem. Supp. Mot. Dismiss Compl. at 20. However, Local 1357 notes in a separate section of its brief that "[a] member ... has 45 days from the election judge's decision to file an 'appeal' under [section 12] to a vice president of the IBEW and is required to provide a copy of the appeal to the local union." *See id.* at 19. If the Basic Laws' 30–day deadline governs, then it is unclear why the Basic Laws do not govern election protests entirely, and why this court must look to section 12 for selected procedural requirements, such as the copy requirement, but not for others, such as the time limitation.

Local 1357's hybrid reading of the Basic Laws and section 12 creates confusion. If protest procedures are confusing, Kim was not obligated to exhaust his internal remedies. As the Supreme Court noted in *Hodgson v. Local Union 6799, United Steelworkers of Am.*, 403 U.S. 333, 91 S.Ct. 1841, 29 L.Ed.2d 510 (1971), "exhaustion is not required when internal union remedies

---

tion of the election results by the election judge and shall specify the alleged violations of the election rules provided by law, the Constitution, and/or the local union by-laws. The International Vice President shall investigate all such protests and render a decision in an expeditious manner.

The decision of the International Vice President shall be considered final; and, in the United States, the protesting member may proceed to the Department of Labor if not satisfied with the decision of the International Vice President.

are unnecessarily complex or otherwise operate to confuse or inhibit union protestors." *Id.* at 341 n. 6, 91 S.Ct. 1841.

■ Local 1357 argues that Kim complained to Mowrey about only the timing of Waialeale's disqualification, and not about the substance of the disqualification of which the Secretary complains. "While the LMRDA requires a union member to exhaust his internal remedies by filing an internal grievance before the Secretary may become involved, the enforcement powers of the Secretary do not depend on the specifics of [the] union member's protest." *Reich v. District Lodge 720, Int'l Ass'n of Machinists & Aerospace Workers,* 11 F.3d 1496, 1503 (9th Cir.1993) (citing *Glass Bottle Blowers Ass'n,* 389 U.S. at 474–75, 88 S.Ct. 643). "The Secretary may litigate a claim if it is related to the election defects about which members complained to the union." *Machinists & Aerospace Workers,* 11 F.3d at 1503 (citing *United Steelworkers,* 403 U.S. at 340–41, 91 S.Ct. 1841). The Supreme Court explained the rationale for this rule:

> [U]nion members may use broad or imprecise language in framing their internal union protests and . . . members will often lack the necessary information to be aware of the existence or scope of many election violations. Union democracy is far too important to permit these deficiencies to foreclose relief from election violations. . . .

*United Steelworkers,* 403 U.S. at 340–41, 91 S.Ct. 1841.

In *United Steelworkers,* a union member protested to the union over an incumbent's use of union facilities to prepare campaign materials. *See id.* at 334, 91 S.Ct. 1841. After his internal complaints failed, the union member filed a complaint with the Secretary that repeated his earlier charge and also raised, for the first time, an objection to a meeting-attendance requirement imposed as a condition of candidacy. *See*

*id.* The Supreme Court ruled that the Secretary could not challenge the attendance rule because the union member had not objected to the rule during his pursuit of internal remedies. *See id.* at 336, 91 S.Ct. 1841.

In this case, Kim's union complaint was sufficiently related to the Secretary's claims to put Local 1357 on notice of those claims. Unlike the complaints in *United Steelworkers,* Kim's complaint and the Secretary's complaint do not involve substantially unrelated charges such as an improper use of union facilities and a meeting-attendance requirement. This court imposes a heavy burden on Local 1357 to show that it could not in any way discern that Kim was complaining of the violation the Secretary complains of now. *See id.* at 341, 91 S.Ct. 1841. The union fails to meet this burden. It could reasonably discern from Kim's letter that Kim was dissatisfied not only with the timing of Waialeale's disqualification, but also with the fact of the disqualification. For example, Kim wrote, "Many members were pleased that Brother Waialeale was going to be on the ballot," and "I was very dismayed when I received my ballot and Brother Waialeale's name was not on it."

In *Machinists & Aerospace Workers,* the Ninth Circuit held that the Secretary's claim that the union had failed to make reasonable efforts to keep its mailing lists current was not outside the scope of the union members' internal protests alleging that members had not been mailed election notices. *See Machinists & Aerospace Workers,* 11 F.3d 1496 at 1503–04. Here, the Secretary's complaint is sufficiently within the scope of Kim's internal protest such that Local 1357 "cannot legitimately claim to be surprised that it must now defend" the Secretary's claim. *See id.* at 1504.

## B. *Mootness.*

■ Local 1357 argues that the Secretary's claims are moot, given Kim's withdrawal of his complaint with the Secretary before she filed suit. Local 1357 contends that, because there is no longer a genuine dispute between Kim and Local 1357, the Secretary may not proceed with her action.

In support of its proposition, Local 1357 relies heavily upon *Kupau v. Yamamoto,* 622 F.2d 449 (9th Cir.1980). This reliance is misplaced, as the facts of *Kupau* differ in important ways from the facts in this case. Kupau had defeated Ito in an election for Financial Secretary–Business Representative. *See id.* at 452. After the election, Ito filed a protest with the union, charging that Kupau had been ineligible to run in the election. *See id.* The union agreed, and refused to install Kupau. *See id.* Kupau sued in district court pursuant to Title I, and the district court issued a preliminary injunction ordering Kupau's installation. *See id.* at 452–53. After the injunction issued, Ito filed a complaint with the Secretary under Title IV challenging Kupau's eligibility. *See id.* at 453. The Secretary, upon finding probable cause, then filed an independent suit against the union in district court. *See id.* Adversaries only nominally, the Secretary and the union sought to enter a consent decree setting aside Kupau's election and providing for a new election between Ito and a third candidate. *See id.*

The district court denied Kupau's motion to intervene in that action, and Kupau appealed to the Ninth Circuit. *See id.* The Ninth Circuit concluded that the Secretary's suit under Title IV was improper because it was "in reality a challenge not to the stance of the union, with which the Secretary is in total agreement, but to the injunction entered by the district court." *Id.* at 458. The Ninth Circuit explained that the injunctive order did not create a

dispute between Ito and the union as contemplated by Title IV, but created only a dispute between Ito and the district court. *See id.* As Ito had no basis for complaining to the Secretary about the union's position, the Secretary had no basis for suing under Title IV. *See id.* Title IV remedies are "premised on the existence of a genuine dispute between the aggrieved union member and the union." *Id.* The Ninth Circuit held that the district court lacked jurisdiction over the Secretary's complaint, rejecting the Secretary's proposition that "purely collusive and non-adversarial" suits by the Secretary against the union are allowed under Title IV. *See id.*

Local 1357 argues that the Secretary's suit should be dismissed because Kim has withdrawn his complaint. Unlike *Kupau,* however, the present case involved a genuine dispute between Kim and Local 1357 that was still in issue when the Secretary filed her complaint. *See id.* at 458 (focusing on Ito's relationship with the union at the time the Secretary filed suit). Kim had protested the union's disqualification of Waialeale and had asked for a new election. Moreover, the Secretary's dispute with the union is clearly not "purely collusive and non-adversarial." Nor is the Secretary "in total agreement" with the stance of the union. The Secretary seeks to void the election results and hold a new election under its supervision, while the union seeks to maintain the election results.

Moreover, Kim's withdrawal still left for the Secretary protection of the public interest in free and democratic union elections. This vital public interest transcends the narrower interest of the complaining union member. *Glass Bottle Blowers Ass'n,* 389 U.S. at 475, 88 S.Ct. 643. In enacting Title IV, Congress expressed concern that powerful union members may use their inherent advantage over potential

rank and file challengers to perpetuate their control. *See id.* at 474–75, 88 S.Ct. 643. In *Glass Bottle Blowers Ass'n,* the Secretary claimed that a union election violated Title IV because all candidates were unreasonably required to have attended 75 percent of the union's monthly meetings in the two years preceding the election. *See id.* at 466–67, 88 S.Ct. 643. Between the time the Secretary filed his complaint and the time the Third Circuit considered the Secretary's appeal of the district court's decision, the union conducted its next election. *See id.* at 467, 88 S.Ct. 643. The Supreme Court held that the intervening election did not moot the Secretary's action because the incumbents may have influenced the intervening election, and the public interest in assuring free and democratic union elections still remained. *See id.* at 475, 88 S.Ct. 643. The present case raises similar considerations. Kim's withdrawal did not eliminate the possibility that union members would be unable to protect themselves without the Secretary's assistance. Nor did the withdrawal of Kim's complaint extinguish the public interest in assuring that Local 1357 elections are free and democratic.

In *Hodgson v. Local Union 400, Bakery & Confectionery Workers' Int'l Union of Am.,* 491 F.2d 1348 (9th Cir.1974), the Ninth Circuit examined the unilateral holding by a union of a second election after a union member had filed a proper complaint with the Secretary concerning the first election, but before the Secretary filed suit. *See id.* at 1349–50. The Ninth Circuit held that the second election did not render the case moot or otherwise deprive the Secretary of the right to proceed in court. *See id.* at 1349. The court explained that allowing the Secretary to proceed would best advance the congressional objective of fostering union self-government while avoiding unnecessary government intervention and needless expenditure of the Secretary's resources. *See id.* at 1351.

Allowing the Secretary's suit here would foster union self-government by providing the union with a substantial incentive to respond quickly and effectively to legitimate protests by union members. A union would have no reason to delay remedial measures while seeing whether the Secretary might find probable cause to impose remedies. *See id.* at 1351–52. Permitting this kind of suit would not unnecessarily involve the government in internal union affairs because the Secretary is already involved once a union member exhausts internal remedies and files a timely complaint with the Secretary. *See id.* Moreover, the Secretary's policy not to permit the withdrawal of a complaint from consideration by the Department of Labor prevents either collusion between the complaining member and the union or coercion of the member by the union. *See Glass Bottle Blowers Ass'n,* 389 U.S. at 474, 88 S.Ct. 643. Unions have the greatest incentive to remedy defects during the internal complaint process, before the Secretary gets involved, if they know that a union member's subsequent withdrawal of his complaint will not allow them to avoid litigation.

### C. *Res judicata.*

▆▆▆▆ The Secretary's action is not precluded by res judicata because the Secretary's claim is not the same as Waialeale's, and the Secretary was not in privity with Waialeale. "Res judicata, or claim preclusion, provides that a final judgment on the merits of an action precludes the parties from relitigating all issues connected with the action that were or could have been raised in that action." *Rein v. Providian Financial Corp.,* 252 F.3d 1095, 1098 (9th Cir.2001) (citation omitted). Res judicata bars a claim when: (1) the parties are

identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded to a final judgment on the merits; and (4) the same claim or cause of action was involved in both suits. *Id.* (citations omitted). Local 1357 contends that Wailaleale's Title I claim is identical to the Secretary's Title IV claim, and that the dismissal of Wailaleale's claim with prejudice therefore precludes the Secretary from relitigating that claim here.

The Secretary's Title IV claim is not the "same claim" as Waialeale's Title I claim because the Secretary alleges different violations of the LMRDA and seeks different forms of relief from those pursued by Waialeale. Waialeale sought damages for Local 1357's alleged violation of section 101(a)(5) of the LMRDA, 29 U.S.C. § 411(a)(5), which protects union members against improper disciplinary action. Waialeale also sought to enjoin the election from being held without a ballot listing him as a candidate. The Secretary, meanwhile, charges that Local 1357 violated section 401(e) of the LMRDA, 29 U.S.C. § 481(e), which provides, in pertinent part, that every union member in good standing shall be eligible to be a candidate for office.[3] The Secretary seeks to void the results of the election and conduct a new election under the Secretary's supervision. Waialeale's and the Secretary's claims therefore differ in important ways. The Secretary does not, for example, demand that any new election include Waialeale as a candidate, or demand that Waialeale re-ceive money damages. Indeed, the Secretary has no power to grant relief for Title I violations. *Casumpang,* 269 F.3d 1042, 1057–58.

Moreover, the exclusivity provision of Title IV makes it impossible for Waialeale to have brought the same claim for relief under Title I as the Secretary now seeks under Title IV. "[S]uit by the Secretary under Title IV is the exclusive post-election remedy for challenges to an election." *Crowley,* 467 U.S. at 549, 104 S.Ct. 2557. The exclusivity provision of Title IV prevents an individual from directly challenging the validity of an election under Title I after the election has been completed.[4] *Id.* at 541, 104 S.Ct. 2557. Here, the Secretary directly challenges the validity of the election and seeks to void its results and conduct a new election. Because an individual plaintiff is not allowed to sue for such post-election relief in district court, the Secretary's claim must be different from any claim brought by an individual plaintiff, and therefore cannot be precluded by res judicata.

■ The Secretary is not in privity with Waialeale because the Secretary's interests in the current suit differ from Waialeale's interests in the previous suit. "Privity represents a legal conclusion that the relation between the party and non-party is so close that the judgment may fairly bind the non-party." *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1277–78 (9th Cir.1992) (citations and internal quotation marks omitted). "Privity and

---

**3.** Although the disqualification was allegedly on the basis of union discipline that had been imposed in violation of section 101(a)(5) of the LMRDA (a Title I violation), the Secretary's action is based on Local 1357's alleged violation of section 401(e) of the LMRDA (a Title IV violation).

**4.** However, Title I claims or other actions that do not *directly* challenge the validity of elec-tions already conducted may not be foreclosed by Title IV's exclusivity provision. *Crowley,* 467 U.S. at 541 n. 16, 104 S.Ct. 2557; *Casumpang,* 269 F.3d 1042, 1056. *But cf. Kupau,* 622 F.2d at 454–456 (holding, pre-*Crowley,* that a plaintiff could pursue post-election Title I relief that could determine his eligibility).

fairness exist if a party represented the interests of the non-party." *Id.* (citation omitted). The Secretary may not be fairly bound by Waialeale's claim because the Secretary, as explained above, alleges different violations of the LMRDA and seeks different forms of relief. Waialeale did not represent the Secretary's interests; he was concerned with only his individual interest and not the public interest. The Secretary's obligation to protect the public interest in addition to the union member's individual interest often dictates a different approach to the conduct of the litigation. *See Trbovich,* 404 U.S. at 539, 92 S.Ct. 630. Accordingly, Waialeale's settlement does not bind the Secretary in this case.

■■■■ The Secretary's lack of privity with Waialeale also means that her claims are not barred by collateral estoppel, or issue preclusion. "The doctrine of issue preclusion ... cannot be applied against a litigant who was not a party to or in privity with a party to the prior proceeding." *Shaw v. Hahn,* 56 F.3d 1128, 1131 (9th Cir.1995) (citations omitted). Because the Secretary and Waialeale, for the reasons stated above, were not "so closely aligned in interest that one [was] the virtual representative of the other," the Secretary's claims are not barred by issue preclusion. *Id.* (citations omitted).

## V. *CONCLUSION.*

For the foregoing reasons, the court denies Defendant's motion to dismiss.

IT IS SO ORDERED.