11 F.3d 1496
 145 L.R.R.M. (BNA) 2001, 62 USLW 2396,
127 Lab.Cas. P 10,972
 Robert REICH,* Secretary of Labor, United States
Department of Labor, Plaintiff-Appellant,
v.
DISTRICT LODGE 720, INTERNATIONAL ASSOCIATION OF MACHINISTS
and AEROSPACE WORKERS, AFL-CIO, Defendant-Appellee.
 No. 92-55154.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 14, 1993.
Decided Dec. 16, 1993.
 
 Mary A. Sedgwick, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellant.
 Robert A. Bush, Taylor, Roth, Bush & Geffner, Burbank, CA, for defendant-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before: WOOD, Jr.,** REINHARDT, and RYMER, Circuit Judges
 REINHARDT, Circuit Judge:
 
 
 1
 The primary question before us is what a union must do to comply with the provision of section 401(e) of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA") that requires unions to give notice of union elections to their members. Here we consider the rules that apply when notice is given by mailing the union newspaper to the membership. There is little case law on point.
 
 I. Facts and Proceedings
 
 2
 On July 19, 1989, District 720, International Association of Machinists and Aerospace Workers, AFL-CIO ("District 720" or "the union") conducted elections for President and Secretary-Treasurer that were subject to Title IV of the LMRDA, 29 U.S.C. section 481 et seq. The union notified its membership of the elections by means of its monthly newsletter. The newsletter was timely mailed to about 6200 union members but was not sent to more than 2000 other members for whom the union had no addresses or believed it had incorrect addresses. The incumbent candidates won re-election for the two union offices in dispute here by the following margins:
 
 
 3
 Office Votes Percentage
 Incumbent Challeng. Diff. Inc. Chall.
President 1608 1165 443 57 42
Sec.Treas. 1634 1123 511 59 40
 
 
 4
 Several union members protested the election and, after exhausting their internal remedies, filed a complaint with the Department of Labor. 29 U.S.C. Sec. 482(a). The Secretary of Labor ("the Secretary") conducted an investigation and brought this action to have the election set aside and a new election conducted under his supervision. 29 U.S.C. Sec. 482(b). After significant pre-trial proceedings, the district court denied the Secretary's motion for summary judgment and granted District 720's. The Secretary appeals. We have jurisdiction under 28 U.S.C. section 1291. We reverse and remand.
 
 II. Statutory and Regulatory Framework
 
 5
 The purpose of Title IV is to insure free and democratic union elections and offset some of the inherent advantages that incumbents enjoy over rank and file members. International Org. of Masters, Mates, & Pilots v. Brown, 498 U.S. 466, 476, 111 S.Ct. 880, 887, 112 L.Ed.2d 991 (1991). However, as we have often stated, Congress meant to further this basic policy with a minimum of governmental inference in the internal affairs of unions. E.g. Brock v. Writers Guild of Am., 762 F.2d 1349, 1355 (9th Cir.1985). Section 401(e) of the LMRDA, 29 U.S.C. section 481(e), inter alia requires that "[n]ot less than fifteen days prior to the election notice thereof shall be mailed to each member at his last known home address" by the union. A Labor Department regulation implementing this provision permits a union to comply by publishing the notice in its newspaper and mailing it to the members in a timely fashion. 29 C.F.R. Sec. 452.100. The regulation requires that "a reasonable effort must be made to keep the mailing list of the publication current." Sec. 452.100(d).
 
 
 6
 The Secretary has the exclusive authority to seek a post-election judicial remedy for breaches of Title IV. 29 U.S.C. Sec. 483. Before filing a complaint, the Secretary must find probable cause to believe that a violation "infecting" the election has occurred. Dunlop v. Bachowski, 421 U.S. 560, 570, 95 S.Ct. 1851, 1859, 44 L.Ed.2d 377 (1975); Shelley v. Brock, 793 F.2d 1368, 1372-73 (D.C.Cir.1986). LMRDA section 402, 29 U.S.C. Sec. 482(c)(2), establishes the procedural framework for an enforcement action by the Secretary:
 
 
 7
 If, upon a preponderance of the evidence after a trial upon the merits, the court finds--
 
 
 8
 . . . . .
 
 
 9
 (2) that the violation of section 481 of this title may have affected the outcome of an election,
 
 
 10
 the court shall declare the election, if any, to be void, and direct the conduct of a new election under the supervision of the Secretary and, so far as practicable, in conformity with the constitution and bylaws of the labor organization.
 
 
 11
 The Supreme Court has interpreted the statute as providing that once a violation of section 481 is established, the union has the burden of showing that it did not affect the outcome of the election. See Wirtz v. Hotel Employees Union Local 6, 391 U.S. 492, 506-07, 88 S.Ct. 1743, 1751-52, 20 L.Ed.2d 763 (1968); Marshall v. Local 458 Int'l Bhd. of Teamsters, 643 F.2d 575, 577-78 (9th Cir.1980).
 
 
 12
 III. The District Court Erred in Resolving this Case on Summary Judgment
 
 A. Overview
 
 13
 The parties agree that 6229 union members were mailed copies of the edition of District 720's newsletter that contained the election notice. The newsletter qualifies as a newspaper under the regulations. The Secretary claims that 2061 members were omitted from the mailing list. Of these, 2014 names appeared on what the union calls its "morgue list", i.e., bad address list. The union argues that the morgue list figure of 2014 represents the total number of members who were not mailed notice of the election. In other words, a 47-member difference exists between the union's and the Secretary's calculations of District 720's total membership. The district court concluded that this genuine factual dispute was immaterial for purposes of summary judgment. We agree with that conclusion, although not necessarily for the same reasons. What is material for purposes of this appeal is the undisputed fact that in excess of 2000 union members were not mailed election notices.
 
 
 14
 The numbers game can be simplified further for present purposes. The Secretary does not controvert District 720's contentions that 452 of the 2014 persons whose names appeared on the morgue list actually voted, 290 more were ineligible to vote,[1] 9 were dead, and 1 had transferred, and that the failure to mail notice to these 750 members was of no consequence. Thus, there were somewhat more than 1250 non-voting members who were eligible to vote, did not vote, and did not receive a notice of the election. These members fall into two categories. The first consists of 400-odd members for whom the union claims it never possessed any home addresses. The second comprises approximately 850 members for whom District 720 had home addresses that it believed to be no longer valid. The issue we must consider in this appeal is whether District 720 breached its duty to mail election notices to members of these two groups and, if so, whether the union's actions affected the outcome of the election.[2]
 
 
 15
 B. The District Court Erred By Permitting Inquiry into How Union Members Who Were Not Notified Would Have Voted
 
 
 16
 Preliminarily we should note that in addition to excluding the 750 members as to whom the failure to mail the election notice concededly worked no harm, the district court subtracted from the initial group of 2000 more than 500 members who claimed that they would have voted for the incumbents.[3] The issue of how the union members who were not notified of the election would have voted was raised by the court, not the union. To prevent a lengthy inquiry that he correctly thought to be both irrelevant and inconsistent with the LMRDA's secret ballot requirements, the Secretary stipulated, without waiving his vigorous objection to the inquiry, that over 500 union members would testify that they would have voted for the incumbents.
 
 
 17
 On appeal, neither party defends the propriety of the district court's action in excluding these 500-odd members, and we need address the issue only briefly. We agree with the Secretary that permitting union members to testify as to how they would have voted is inconsistent with the secret ballot requirements of the LMRDA. 29 U.S.C. Sec. 481(d). A secret ballot election is one in which it is intended that the choices made by voters will remain secret. While an individual is free to disclose his vote, the LMRDA's secrecy mandate extends not only to the actual casting of ballots but also to any post-voting procedure designed to determine how individual union members voted or would have voted. See Donovan v. CSEA Local Union 1000, 594 F.Supp. 188, 196 (N.D.N.Y.1984), aff'd in part and rev'd in part, 761 F.2d 870 (2d Cir.1985); Bachowski v. Brennan, 413 F.Supp. 147, 150 (W.D.Pa.), appeal dismissed, 545 F.2d 363 (3d Cir.1976).
 
 
 18
 After the fact statements about how individuals voted are in any event notoriously unreliable. Polls taken after presidential elections show that an overwhelming majority of eligible citizens claim to have voted for the winner, even when the successful candidate was elected by a slim margin or by a plurality vote. There is even more reason to doubt the accuracy of post-election statements in union elections. Members are likely to feel that they will be treated better by their officers if the officers believe that they voted for them. The officers whose election is being challenged continue to hold office pending the completion of legal proceedings, see 29 U.S.C. section 482(a), and the litigation frequently lasts longer than the term of office at issue. Under the circumstances, the temptation to say that one voted for the challenged officeholder is great. Moreover, one of the primary purposes of the secret ballot is to prevent recrimination against persons who vote for losing candidates. Federal Election Comm'n v. Hall-Tyner Campaign Cmtte., 678 F.2d 416, 417 (2d Cir.1982), cert. denied, 459 U.S. 1145, 103 S.Ct. 785, 74 L.Ed.2d 992 (1983). Asking union members who would have voted for the losing ticket to say so puts them in an awkward position and invites unreliable responses, or if the responses are honest, possible recrimination. Finally, such an inquiry constitutes an unjustifiable invasion of the union members' privacy.
 
 
 19
 In sum, the district court erred in allowing an inquiry into how union members who did not receive notice of the election would have voted. In determining whether the outcome of an election was affected by a union's violation of section 481(e), a court must not examine how members who were not sent notification would have voted, but rather how many additional eligible voters (who did not actually vote) would have received notices had there been compliance with the statute. If the number is sufficient to affect the outcome of the election, the results must be set aside. Whether the members who did not vote and did not receive notice would have actually voted and, if so, for whom is not a proper subject of judicial inquiry.
 
 
 20
 C. A Union Must Make Reasonable Efforts to Keep its Membership Lists Current
 
 
 21
 As stated earlier, the primary issue before us is whether District 720 violated its statutory duty by failing to mail election notices to the 400-odd members for whom it had no home addresses and the approximately 850 members for whom it believed it had inaccurate addresses. Before considering that question, we note that while the union argues, contrary to the Secretary, that it had no duty to mail notices to the 400 members for whom it never had home addresses, both parties have treated the union's failure to mail notices to the 850 as a "technical violation" of the LMRDA. Therefore, they have litigated this case as if the relevant question with respect to those members was whether the union has proved that its LMRDA violation did not affect the result of the election.
 
 
 22
 It matters little whether we treat the failure to mail notices to dead letter addresses as part of an inquiry into whether a statutory violation occurred or whether we presume that a violation took place and ask whether the failure to mail the notices affected the outcome of the election. The result will be identical whichever approach we take.[4] Nevertheless, we believe that the former approach is preferable. Although section 481(e) on its face appears to impose an absolute duty upon unions to mail an election notice to the last known home address of every member, the Supreme Court has cautioned against an excessively literal interpretation of the LMRDA. Wirtz v. Local 153, Glass Bottle Blowers Ass'n, 389 U.S. 463, 468, 88 S.Ct. 643, 646, 19 L.Ed.2d 705 (1968). We cannot agree that a violation of the Act occurs every time a union fails to send a notice to a member who is known to be no longer residing at the address the union possesses and who does not receive mail sent to that location. We must consider the Act's statutory language in light of the objectives that Congress sought to achieve. Id. The obvious purpose of the notice requirement is to ensure maximum participation in union elections by rank and file members. See Donovan v. Sailors' Union of the Pacific, 739 F.2d 1426, 1430 (9th Cir.1984), cert. denied, 471 U.S. 1004, 105 S.Ct. 1866, 85 L.Ed.2d 160 (1985). It is not designed to force unions to spend time and money on futile mailings of notices that have no prospect of reaching their intended recipients.
 
 
 23
 Given the Secretary's regulation providing that a union which chooses to send the election notices via its newspaper must make a "reasonable effort to keep the mailing list of the publication current," the most sensible reading of the statute is that it requires a union to make a reasonable effort to maintain a current list of home addresses for its members and to mail its newspaper to them at the addresses on that list.[5] Of course, keeping the mailing address list for a publication current has two aspects. One, a union must initially take reasonable steps to obtain correct home addresses for all of its members and must endeavor to keep the addresses that it has up-to-date. Two, a current mailing list should not include home addresses that have proven to be of no practical utility. Purging a list of invalid addresses is simply part of keeping the list current.[6]
 
 
 24
 The Secretary's argument that a union should be held to be in violation of the statute for failing to mail election notices to all of its members even where, despite all reasonable efforts, it is unable to obtain addresses, or up-to-date addresses, for some of them is contrary to the purposes of both the statute and the Secretary's own regulation.[7] Our interpretation of section 481(e), which the Secretary's regulation supports, allows for the fact that there may well be union members who will refuse to divulge their home addresses, for whatever reason. Moreover, we recognize that union membership may be mobile and that members who have moved may not always provide a new address or leave a forwarding address with the post office, and may not, despite the union's best efforts, respond to its attempts to obtain the necessary information.
 
 
 25
 On the other hand, the approach we take gives a union no incentive to neglect its duties. A union must affirmatively show that it has made reasonable efforts to maintain an accurate mailing list. If it fails to take reasonable steps it takes the risk that its election will be invalidated. What amounts to a reasonable effort will depend on the facts and circumstances of a particular case and therefore is not subject to precise delineation. Nevertheless, relevant considerations would include the steps the union initially took to solicit addresses from its members, its means of verifying that the addresses it has are still correct, its method of compiling the mailing list for the newspaper, and its process, if any, for deciding when addresses should be removed from the circulation list because mail has been returned as undeliverable.
 
 
 26
 D. Even if a Union Fails to Take Reasonable Steps to Maintain a Current Mailing List, It May Still Show That Its Statutory Violation Did Not Affect the Outcome of the Election.
 
 
 27
 If a union is unable to establish the necessary facts showing that it took reasonable steps to maintain a current mailing list for its newspaper and that it sent notices to its members at the addresses on that list, then the remaining inquiry is whether the union's statutory violation affected the result of the election. There are at least four ways a union may prove that its violation had no effect. In some cases, the union will be able to show that the number of members who were not sent election notices is less than the number of votes required to change the outcome. A union may also be able prove that an unreasonable failure to mail election notices did not affect the result of the election if it can show that enough of the members who were not notified a) actually voted; b) were ineligible to vote for certain reasons such as death, resignation, or transfer; or c) would not have received notices of the election even if the union had taken reasonable steps to obtain their correct home addresses.
 
 
 28
 E. This Case Must Be Remanded to the District Court for a Determination Whether the Union Made Reasonable Efforts to Maintain a Current Mailing List and, If Not, Whether Its Statutory Violation Affected the Outcome of the Election.
 
 
 29
 Both parties insist that we can resolve this case in their favor without a remand. The Secretary argues that he is entitled to summary judgment because the union has failed to show that it took reasonable steps to keep its membership lists current. The Secretary claims that the relative ease with which the union was later able to verify that it had incorrect home addresses for many of its members tends to show that it did not act reasonably prior to the election. For its part, District 720 argues that the Secretary cannot contest the reasonableness of its efforts to maintain accurate lists because the issue 1) was not pleaded in the Secretary's complaint in violation of Fed.R.Civ.P. 8, and 2) goes beyond the scope of the internal complaints filed by the protesting union members in this case.
 
 
 30
 We reject both parties' arguments. Although the question whether District 720 took reasonable steps to keep the mailing list for its newsletter current was addressed by both parties in the district court, it was not resolved by the district judge for two reasons: First, under his erroneous legal theory that the court could inquire into how non-voters would have voted, it was unnecessary for him to reach the question; second because a factual determination was necessary it would have been inappropriate for the district court to have resolved the issue on summary judgment. For this reason, it is appropriate to remand this case for further exploration of the reasonableness of the union's efforts to maintain a current list. We note in this regard that the union has set forth some evidence that it attempted to keep its list current and that the inaccuracies in the list were not due to its own failings but rather resulted from the lack of cooperation it received from its membership and its membership's largest employer. That is enough to defeat the Secretary's motion for summary judgment.[8]
 
 
 31
 We disagree with District 720 that the Secretary is somehow barred from arguing that it failed to make reasonable efforts in keeping its lists current. Nothing in Fed.R.Civ.P. 8 requires the Secretary's complaint to plead this issue specifically.[9] The Secretary alleged that the union failed to satisfy 29 U.S.C. section 481(e) with respect to the notices it mailed regarding the July 1989 elections and that the violation may have affected the result. This sufficiently informed District 720 of the claim against it so that it could prepare its defense. Furthermore, the union is incorrect that the reasonableness of its efforts to maintain correct addresses falls outside the union members' original internal protests, which alleged that all members were not mailed election notices in violation of the LMRDA. As 29 C.F.R. section 452.100(d) demonstrates, a union's duty to maintain accurate mailing lists is part of its duty to mail election notices. While the LMRDA requires a union member to exhaust his internal remedies by filing an internal grievance before the Secretary may become involved, the enforcement powers of the Secretary do not depend on the specifics of union member's protest. Wirtz v. Local Union 125, Laborers' Int'l Union of N. Am., 389 U.S. 477, 484-85, 88 S.Ct. 639, 642-43, 19 L.Ed.2d 716 (1968). The Secretary may litigate a claim if it is related to the election defects about which members complained to the union. Hodgson v. Local Union 6799, United Steelworkers of Am., 403 U.S. 333, 340-41, 91 S.Ct. 1841, 1846, 29 L.Ed.2d 510 (1971). Thus, District 720 cannot legitimately claim to be surprised that it must now defend the reasonableness of its efforts to maintain those lists.
 
 
 32
 The reasonableness of District 720's conduct is primarily a factual inquiry. In this case that factual issue was not resolved by the district court. Therefore, we remand this case to the district court so that it may determine whether District 720 violated section LMRDA 401(e), 29 U.S.C. section 481(e), and, if so, whether that violation affected the result of the disputed election.[10]
 
 
 33
 IV. We Decline to Decide Whether If the District Court Finds that a Notification Violation May Have Affected the Result of the Elections, It Must Order A Supervised Election if the Secretary Demands One.
 
 
 34
 The parties raise the issue whether a district court can, in the exercise of its equitable discretion, refuse to order a new, supervised election even though the Secretary still desires that one be held. This question may arise on remand if the Secretary shows that the election was "tainted" under the LMRDA because more than four years have passed since the election at issue in this case took place and District 720 has since conducted another regularly scheduled election.[11] We decline to reach this issue, because the district court has not yet ruled on it, and so it is not before us.
 
 V. Conclusion
 
 35
 We conclude that LMRDA section 401(e), 29 U.S.C. section 481(e), when read in light of its interpretive regulations, requires that if a union opts to use its newspaper as the means of giving notice of union elections, it must make a reasonable effort to maintain a current mailing list of home addresses for all of its members and mail the publication to them at the locations shown on that list. However, a union need not mail the newspaper to individual members when it would be futile to do so. A union that has taken reasonable steps to keep its mailing list current does not violate section 481(e) if it does not mail copies of the newspaper containing the election notices to members whose home addresses it has been unable to obtain or to those who will not receive the mailing if it is sent to the addresses on file.
 
 
 36
 Finally, a violation of section 481(e) will not affect the outcome of an election if the number of members who were not notified on account of the violation is less than the winning candidate's margin of victory. To show that a statutory violation was harmless a union may also introduce evidence that some or all of the members who were not notified actually voted, were ineligible to vote for certain reasons, or would not have received any notice sent to them even if the union had made reasonable efforts to obtain their correct home addresses. However, union members who were eligible to vote but did not do so may not be asked whether or how they would have voted.
 
 
 37
 The judgment of the district court is REVERSED and the case REMANDED for further proceedings consistent with this opinion.
 
 
 38
 RYMER, Circuit Judge, concurring in part and concurring in the judgment:
 
 
 39
 I agree with the result reached by the majority opinion and concur in Parts I, II and III(A). However, I do not agree that this appeal requires us to consider whether the union made reasonable efforts to keep a current mailing list, or the extent to which its efforts bear on the statutory violation which is at issue. The government did not charge the union with keeping bad addresses. Rather, the union was charged with failing to send notices to each member's last known address, in violation of 29 U.S.C. Sec. 481(e). The only issue presented is whether the failure of District Lodge 720 to mail an election notice to the last known address of all members may have affected the outcome of the July 19, 1989 election for District Lodge President and Secretary-Treasurer.[1] On that issue, we must reverse and remand because the district court erred as a matter of law in basing its decision on evidence of how members would have voted. That leaves on remand the determination of whether, without consideration of what some members now say they would have done, the outcome may have been affected. See Donovan v. Local Union 70, Int'l Brotherhood of Teamsters, 661 F.2d 1199, 1202 (9th Cir.1981) (presumption that outcome may have been affected that arises from proof of violation of LMRDA may be rebutted by "tangible evidence 'which supports a finding that the violation did not affect the result' ") (quoting Wirtz v. Hotel, Motel & Club Employees Union, Local 6, 391 U.S. 492, 507, 88 S.Ct. 1743, 1752, 20 L.Ed.2d 763 (1968)).
 
 
 
 *
 Pursuant to Fed.R.App.P. 43(c)(1), Robert L. Reich is substituted for Lynn Martin, former Secretary of Labor
 
 
 **
 Honorable Harlington Wood, Jr., Senior United States Circuit Judge, Seventh Circuit Court of Appeals, sitting by designation
 
 
 [1]
 The parties have not addressed the question of a union's duty to send election notices to members who are ineligible to vote. The Secretary concedes that District 720's failure to send notices to the 290 ineligible members in this case was of no consequence. However, 29 C.F.R. Sec. 452.99 requires that notices be sent to every member within the meaning of 29 U.S.C. Sec. 402(o) and not just members who are eligible to vote. We need not resolve whatever tensions may exist between the regulation and the Secretary's position in this case. As we hold in section III.D infra, the failure to send notice to a member who was ineligible to vote because of death, resignation, or transfer will not affect the outcome of an election. We express no opinion as to whether a union's failure to mail an election notice to a person who is ineligible to vote for another reason, e.g. nonpayment of dues, which might be remedied prior to the election, is a violation of the LMRDA and, if so, whether it should be held to have affected the results of the disputed election
 
 
 [2]
 The parties have addressed the union's actions only within the context of the latter question. For the reasons explained in section III.C infra, we believe that the union's conduct should be initially considered at the liability rather than at the remedy stage. However, because we conclude that the statute puts the burden on the union to show that it acted reasonably, it would make no practical difference were we to analyze this case as the parties have done. We would reach the identical result either way
 
 
 [3]
 The district court also subtracted the 400-plus members for whom the union had never had any home addresses. Thus, the district court subtracted about 1650 (750 + 500 + 400) members total from the approximately 2000 members who did not receive notice of the election. Because the remaining 350-odd members were less than the margin of victory in the disputed elections, the district court granted the union's motion for summary judgment
 
 
 [4]
 See note 2 supra
 
 
 [5]
 To the degree the District of Columbia Circuit's somewhat unclear opinion in Brennan v. Local Union 639 Int'l Bhd. of Teamsters, 494 F.2d 1092, 1097-98 (D.C.Cir.1974), suggests otherwise, we disagree. We agree with the reasoning of the dissenting judge that a union's exercise of due care in obtaining addresses from its membership must be considered. 494 F.2d at 1100-01 (Robb, J., dissenting)
 
 
 [6]
 In the regulations, as in the statute, there is language that could be read as requiring the mailing of notice to the last known home address of a member even when it is undisputed that the notice will not reach the member if mailed there. Nevertheless, we believe our reading is more reasonable in light of the regulation as a whole and more faithful to the statutory purpose
 
 
 [7]
 None of the cases relied upon by the Secretary takes the position he urges here. In both Wirtz v. Local Union 1262, United Bhd. of Carpenters, 285 F.Supp. 455, 464 (N.D.Cal.1968), and Wirtz v. Local Union 169, Int'l Carrier's, 246 F.Supp. 741, 752 (D.Nev.1965), the district judges specifically examined whether the unions had exercised reasonable care in maintaining their membership lists. Likewise, in Marshall v. American Postal Workers Union, 486 F.Supp. 79, 83 (D.D.C.1980), the court considered whether the administrative obstacles to maintaining accurate records offered by the union were "insuperable". In Marshall v. Office & Professional Employees Union Local 2, 505 F.Supp. 121, 123 (D.D.C.1981), the union never claimed that its records were incomplete or inaccurate. Indeed, the court stated that home addresses of the members who were not notified were "somewhere in the union records." While the exact holding of Local Union 639, 494 F.2d at 1097-98, is not certain, the D.C. Circuit, as the Secretary admits, specifically approved the "gross neglect" analysis set forth in Local 169
 
 
 [8]
 We also note that in the district court the Secretary took the position that whether the union took all necessary steps to comply with its duty to keep its mailing list current was a disputed issue of fact to be resolved at trial
 
 
 [9]
 Federal R.Civ.P. 8(a) requires a complaint merely to:
 (1) set forth a short and plain statement of the grounds upon which the court's jurisdiction is invoked ..., (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief sought.
 
 
 [10]
 The union has introduced declarations from 440 of the 850 members who were removed from the mailing list because the union concluded that their addresses were no longer valid. In these declarations the union members state that they would not have received any notice that was mailed to them at the home addresses the union had. If District 720 cannot show that its decision to take these 850 names off the circulation list for the newsletter was reasonable, then it may attempt to prove that its failure to mail notices to these members did not affect the result of the election. See section III.D supra
 
 
 [11]
 Neither party argues that the election that took place on July 19, 1993 renders this case moot. It is well established that a properly administered but unsupervised intervening election does not prohibit a court from ordering a supervised election to remedy the vestigial effects of an earlier election that violated Title IV. Wirtz v. Local 153, Glass Bottle Blowers Ass'n, 389 U.S. 463, 475, 88 S.Ct. 643, 650, 19 L.Ed.2d 705 (1968)
 
 
 [1]
 As the union argues:
 The Act unambiguously requires a union to mail notices of an election to the last known addresses of all of its members, and does not condition that requirement on the possession of correct addresses. Courts have stated on numerous occasions that the possession of incorrect addresses does not in fact excuse the obligation to send notices. The District does not argue that this Court should take any different approach. A violation occurred, and the only question is whether the remedy for that violation should be a remedial election.