**Elaine L. CHAO, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**LOCAL 538 OF the UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION, AFL–CIO, CLC, Defendant.**

No. 03–C–474–S.

United States District Court, W.D. Wisconsin.

Feb. 20, 2004.

Richard D. Humphrey, Assistant U.S. Attorney, Madison, WI, and Leonard A. Grossman, U.S. Department of Labor Office of the Solicitor, Chicago, IL, for Plaintiff.

Bruce M. Davey, Lawton & Cates, Madison, WI, for Defendant.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Plaintiff U.S. Secretary of Labor Elaine L. Chao commenced this action to set aside as invalid the January 23 and 24, 2003 election conducted by defendant Local 538 of the United Food and Commercial Workers International Union, AFL–CIO and to direct the conduct of a new election under plaintiff's supervision in accordance with Title IV of the Labor–Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 481–483. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 482(b). The matter is presently before the Court on plaintiff's motion for summary judgment. The following facts are undisputed.

## BACKGROUND

Defendant Local 538 of the United Food and Commercial Workers International Union, AFL–CIO represents 2,100 members who are employees of three South Central Wisconsin employers: Oscar Mayer, Doskocil Foods (now Tyson), and Jones Dairy. Local 538 conducted an election of officers on January 23 and 24, 2003. Several officer positions were contested in the election including President, Secretary–Treasurer, eight of twelve Vice Presidents, and two Delegates–at–Large to the United Food and Commercial Workers International Convention. The margin of victory in the election ranged from 15 votes in the Secretary–Treasurer election to 453 in the

election for President. The elected officers are currently serving three-year terms.

The *Union Labor News* is the monthly newspaper of the South Central Federation of Labor, which serves several unions in South Central Wisconsin including Local 538. Members of Local 538 receive the *Union Labor News* each month by mail. Each edition consists of twelve pages.

Information concerning the election was included in the October, November, December, and January editions of the *Union Labor News*. Election information first appeared on page ten of the October and November editions and page eight of the December edition in a section entitled "UFCW Local 538 Report to Membership." Information concerning the election also appeared on page eight of the January edition in a section entitled "Laborers Local 464 Laborers Report." No election information was mailed to Local 538 members other than that which was included in the *Union Labor News*.

The "UFCW Local 538 Report to Membership" on page ten of the October 2002 edition of the *Union Labor News* contains the first mention of the election. A large black rectangular box (approximately one inch tall and five inches across) on the top of the page with large white letters and a smokestack logo identifies the page as the "UFCW Local 538 Report to Membership." One half of the page consists of three large advertisements. In the upper right-hand corner of the page is a photograph of two Local 538 members in protective clothing. The photograph is accompanied by a large, detailed caption. The report itself is divided into two columns. Three headings divide the second column in larger, bolded text: "RETIREES," "NEW STEWARDS," and "UNION MEETINGS." The first column contains no heading but is devoted to describing the nomination and election processes for officers and delegates to the upcoming United Food and Commercial Workers International Convention. This information continues until about one-half way down in the second column. Specifically, the report describes the dates, times, and places of the nominations and elections for each of the three employer-units of Local 538. A close examination reveals that the words "nominations" and "elections," which in total occur five times, are bolded within the article.

The Local 538 election information is repeated in the UFCW Local 538 Report to Membership on page ten of the November 2002 edition of the *Union Labor News*. Again, half of the page consists of advertisements—one of which is a large reminder to vote in the upcoming Wisconsin state elections. The report begins with an essay discussing which policy issues will likely influence union members' selection of candidates in the state elections. The Local 538 election information begins one-half way down the first column and ends one-half way down the second column. This time, it is preceded by the heading "REMINDER TO ALL UFCW LOCAL 538 MEMBERS." Again, the words "nominations" and "election" are bolded. The UFCW Local 538 Report to Membership appears on page eight of the December 2002 edition of the *Union Labor News*. The report begins with an essay concerning recent U.S. Supreme Court decisions involving the Americans with Disabilities Act and their effect on workers. The heading "REMINDER TO ALL UFCW LOCAL 538 MEMBERS" appears toward the bottom of the first column, and the election information follows, continuing two-thirds way down the second column. The information provided is similar to that in the October and November editions. Again, one-half of the page consists of two large advertisements. The following page contains a section entitled "UFCW Local

538 Jefferson Report." The Jefferson unit is one of the Local 538 employer-units. One paragraph of this report repeats the election information pertinent to the Jefferson unit.

The January 2003 edition of the *Union Labor News* does not contain a section identified as the UFCW Local 538 Report to Membership. The section is mislabeled. Instead, a large black rectangular box (also approximately one inch tall and five inches across) on the top of the page with large white letters and a hard hat logo identifies the page as the "Laborers Local 464 Laborers Report." Local 464 is a different international union which is also served by the *Union Labor News*. Two-thirds of this page consists of advertisements. The report begins with an essay reminding members of their Weingarten rights. Next, election information follows the heading "ELECTION OF OFFICERS, EXECUTIVE BOARD AND DELEGATES PLEASE NOTE CHANGES FOR POLLING HOURS FOR THURSDAY, JANUARY 23, 2003 FOR THE UFCW LOCAL 538 OSCAR MAYER—MADISON UNIT."

By letter dated February 7, 2003 Local 538 member Joseph R. Jerzewski protested the election to the Election Chairperson. The Chairperson denied his protest. Jerzewski appealed the denial of his protest to the International President. Having invoked internal union remedies without obtaining a final decision, Jerzewski filed a complaint with plaintiff, who commenced this action pursuant to 29 U.S.C. § 482(a)(2).

## MEMORANDUM

The Labor–Management Reporting and Disclosure Act of 1959 (LMRDA) requires that "[n]ot less than fifteen days prior to the election notice thereof shall be mailed to each member at his last known home address." 29 U.S.C. § 481(e). The parties dispute whether information contained within the four editions of *Union Labor News* was sufficient to provide "notice" of the 2003 election within the meaning of § 481(e) of the LMRDA. The LMRDA does not define the term "notice."

Summary judgment is appropriate when, after both parties have the opportunity to submit evidence in support of their respective positions and the Court has reviewed such evidence in the light most favorable to the nonmovant, there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also Usery v. Int'l Org. of Masters, Mates & Pilots, Int'l Maritime Div., ILA, AFL–CIO*, 538 F.2d 946, 949 n. 5 (2d Cir.1976) (interpreting 29 U.S.C. § 382(c) to permit summary judgment despite the statute's use of the phrase "after a trial upon the merits").

A fact is material only if it might affect the outcome of the suit under the governing law. Disputes over unnecessary or irrelevant facts will not preclude summary judgment. A factual issue is genuine only if the evidence is such that a reasonable factfinder, applying the appropriate evidentiary standard of proof, could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Plaintiff is responsible for enforcing the elections provisions of Title IV of the LMRDA. 29 U.S.C § 482. The Department of Labor has promulgated interpretive regulations with respect to these provisions: 29 C.F.R. pt. 452 (2003). Two of these regulations address the notice requirement of § 481(e). The first describes the notice requirement in relevant part as follows:

Elections required by title IV to be held by secret ballot must be preceded by a

notice of election mailed to each member at his last known home address not less than fifteen days prior to the election.... The notice must include a specification of the date, time and place of the election and of the offices to be filled, and it must be in such form as to be reasonably calculated to inform the members of the impending election. Specification of the offices to be filled would not be necessary if it is a regular, periodic election of all officers and the notice so indicates. A statement in the union bylaws that an election will be held at a certain time does not constitute the notice required by the statute. Since the Act specifies that the notice must be mailed, other means of transmission such as posting on a bulletin board or hand delivery will not satisfy the requirement. A notice of election must be sent to every member as defined in section 3(o) of the Act, not only to members who are eligible to vote in the election. Where the notice, if mailed to the last known permanent or legal residence of the member, would not be likely to reach him because of a known extended absence from that place, the statutory phrase "last known home address" may reasonably be interpreted to refer to the last known temporary address of definite duration. A single notice for both nominations and election may be used if it meets the requirements of both such notices.

29 C.F.R. § 452.99 (footnote omitted). The second of these regulations specifically addresses the use of a union newspaper as notice:

A labor organization may comply with the election notice requirement by publishing the notice in the organization's newspaper which is mailed to the last known home address of each member not less than fifteen days prior to the election. Where this procedure is used (a) the notice should be conspicuously placed on the front page of the newspaper, or the front page should have a conspicuous reference to the inside page where the notice appears, so that the inclusion of the election notice in a particular issue is readily apparent to each member; (b) the notice should clearly identify the particular labor organization holding the election; (c) the notice should specify the time and place of the election and the offices to be filled; and (d) a reasonable effort must be made to keep the mailing list of the publication current.

*Id.* § 452.100.

■ As a preliminary matter, the parties dispute the degree of deference owed these regulations. Citing *Bethlehem Steel Corp. v. Bush,* 918 F.2d 1323 (7th Cir. 1990), plaintiff argues that the regulations warrant substantial deference under the doctrine announced in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). If *Chevron* deference is warranted, then the Court must accept the interpretation of § 481(e) contained in the regulations if it is based upon a permissible construction of the LMRDA. 467 U.S. at 844, 104 S.Ct. 2778. Plaintiff's reliance on *Bethlehem Steel* and *Chevron,* however, is contrary to both recent U.S. Supreme Court precedents and plaintiff's own regulations.

In *Christensen v. Harris County,* the U.S. Supreme Court clarified that agency interpretations such as those contained in enforcement guidelines "do not warrant *Chevron*-style deference." 529 U.S. 576, 585, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000); *see generally* 1 Richard J. Pierce, Jr., *Administrative Law Treatise* §§ 3.5, 6.4 (4th ed.2002). Instead, such interpretations are entitled to respect to the extent that they have the power to persuade under the standard announced in *Skidmore*

*v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944). *Christensen*, 529 U.S. at 587, 120 S.Ct. 1655. In *United States v. Mead Corp.*, the Court provided additional guidance as to when *Chevron* deference is appropriate:

> We hold that administrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority. Delegation of such authority may be shown in a variety of ways, as by an agency's power to engage in adjudication or notice-and-comment rulemaking, or by some other indication of a comparable congressional intent.

533 U.S. 218, 226–27, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001); *accord Matz v. Household Int'l Tax Reduction Inv. Plan*, 265 F.3d 572, 574–75 (7th Cir.2001).

Both parties recognize that Congress did not delegate authority to the Department of Labor to make rules carrying the force of law. This fact suggests that *Skidmore*-style deference is appropriate. *E.g.*, *Christensen*, 529 U.S. at 587, 120 S.Ct. 1655. The regulations themselves confirm the accuracy of this suggestion. Quoting *Skidmore*, the introductory statement to 29 C.F.R. pt. 452 states as follows:

> Interpretations of the Assistant Secretary with respect to the election provisions of Title IV are set forth in this part to provide those affected by these provisions of the Act with "a practical guide * * * as to how the office representing the public interest in its enforcement will seek to apply it." The correctness of an interpretation can be determined finally and authoritatively only by the courts. It is necessary, however, for the Assistant Secretary to reach informed conclusions as to the meaning of the law to enable him to carry out his statutory duties of administration and enforcement. The interpretations of the Assistant Secretary contained in this part, which are issued upon the advice of the Solicitor of Labor, indicate the construction of the law which will guide him in performing his duties unless and until he is directed otherwise by authoritative rulings of the courts or unless and until he subsequently announces that a prior interpretation is incorrect.

29 C.F.R. § 452.1 (alteration in original) (footnote omitted) (quoting *Skidmore*, 323 U.S. at 138, 65 S.Ct. 161). Accordingly, the regulations are entitled to respect only to the extent that they have the power to persuade under the standard announced in *Skidmore*.

■ In *Skidmore*, the U.S. Supreme Court held that although an interpretive bulletin issued by the administrator of the Fair Labor Standards Act did not have the force of law, it was nevertheless entitled to respect to the extent that it was persuasive:

> We consider that the rulings, interpretations and opinions of the Administrator under [the Fair Labor Standards Act], while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

323 U.S. at 140, 65 S.Ct. 161; *accord Mead*, 533 U.S. at 234, 121 S.Ct. 2164.

The Supreme Court has cautioned that a proper construction of congressional labor

legislation like the LMRDA "frequently requires consideration of its wording against the background of its legislative history and in the light of the general objectives Congress sought to achieve." *Wirtz v. Local 153, Glass Bottle Blowers Assoc.*, 389 U.S. 463, 468, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968). The primary purpose of the election notice provision of the LMRDA is to guarantee "free and democratic" elections by promoting maximum participation in union elections and thereby ensure the responsiveness of union leadership to rank-and-file members. *Id.* at 470, 88 S.Ct. 643.

> A pervasive theme in the congressional debates about the election provisions was that revelations of corruption, dictatorial practices and racketeering in some unions investigated by Congress indicated a need to protect the rights of rank-and-file members to participate fully in the operation of their union through processes of democratic self-government, and, through the election process, to keep the union leadership responsive to the membership.

*Wirtz v. Hotel, Motel and Club Employees Union, Local 6*, 391 U.S. 492, 497, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968) (footnote omitted); *accord Reich v. District Lodge 720, Int'l Ass'n of Machinists and Aerospace Workers, AFL–CIO*, 11 F.3d 1496, 1498 (9th Cir.1993); *Chao v. Local 54, Hotel Employees and Rest. Employees Int'l Union*, 166 F.Supp.2d 109, 113 (D.N.J.2001).

The "notice" requirement of § 481(e) is best understood in this context as a means of promoting maximum participation in union elections by ensuring that each union member will receive effective notice of the election. Consistent with this understanding, the regulations require that the notice "be in such form as to be reasonably calculated to inform the members of the impending election." 29 C.F.R. § 452.99.

Section 452.100 of the regulations permits a labor organization to comply with the election notice requirement by publishing the notice in the organization's newspaper. 29 C.F.R. § 452.100. Where an organization relies on its newspaper to provide notice, however, § 452.100 recommends that "the notice should be conspicuously placed on the front page of the newspaper, or the front page should have a conspicuous reference to the inside page where the notice appears, so that the inclusion of the election notice in a particular issue is readily apparent to each member." *Id.* The Department of Labor has not changed this interpretive regulation since its pronouncement in 1973. *Compare* 38 Fed.Reg. 18,324, 18,335 (July 9, 1973), *with* 29 C.F.R. § 452.100 (2003). For thirty years § 452.100 has provided the agency, courts, and union officials with a consistent construction of § 481(e).[1]

1. Defendant suggests that election officials may have been poorly informed by a publication of the U.S. Department of Labor entitled *Conducting Local Union Officer Elections: A Guide for Election Officials* (2001). This publication is introduced as a guide to help election officials plan and conduct local union officer elections. The guide includes the following recommendation: "An election notice conspicuously placed in the union's newspaper which is mailed to each member's home address at least 15 days prior to the election satisfies the election notice requirement." Defendant argues that this recommendation makes no mention of placing the notice on the newspaper's front page. The Defendant has produced no evidence, however, that Local 538 officials were even aware of (much less that they relied on) this alleged publication in conducting the election. Further, this publication is wholly consistent with § 452.100. Both require conspicuous notice. The Court's decision is similarly based upon a determination of whether the election information provided by defendant was conspicuous. The Court looks to § 452.100 for guidance in determining what qualifies as "conspicuous" notice.

Defendant correctly argues that the word "should" in § 452.100 indicates that § 452.100 is directory, not mandatory. The regulation is intended to provide those affected with "a practical guide * * * as to how the office representing the public interest in its enforcement will seek to apply it." 29 C.F.R. § 452.1 (alteration in original)(quoting *Skidmore*, 323 U.S. at 138, 65 S.Ct. 161). As previously discussed, the regulation does not have the force of law.

Defendant is accused of failing to satisfy the statutory notice requirement of 29 U.S.C. § 481(e), however, not the regulation. Section 481(e) is not merely directory, and the regulation, while not controlling upon the Court by reason of its authority, does constitute a body of experience and informed judgment to which the Court properly resorts for guidance to determine what defendant should have done to satisfy the notice requirement of § 481(e). *Skidmore*, 323 U.S. at 140, 65 S.Ct. 161.

An earlier proposal of the election notice provision provided "that notice of a union election must be given in a manner which is reasonably calculated to inform substantially all of the members eligible to vote of the time and manner of seeking nomination and of the place and date of the election." *Brennan v. Local Union No. 639, Int'l. Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am.*, 494 F.2d 1092, 1097 (D.C.Cir.1974). This language was strengthened before enactment to the current language specifically requiring notice by mail. Senator Dodd, one of the sponsors of the amendment, stated on the Senate floor:

> By means of this amendment, I am trying to make certain that every union member will receive a written notice at least 15 days before an election is to be held. . . .

> So I think it very little to require that a union mail a postal-card notice 15 days before an election of officers is to be held, to remind the membership and to notify the membership that the election is to be held. That is not asking very much.[2]

105 Cong. Rec. 6,518 (1959), *quoted in Local Union No. 639*, 494 F.2d at 1097 n. 8.

As Senator Dodd's statement indicates, the notice requirement would be satisfied by the mailing of an individual notice to each member's last known address. "That is not asking very much." *Id.* Consistent with Senator Dodd's statement, one permissive construction of § 481(e) would be to require the mailing of individual notices of election to each member's last known address. *Cf. Kaszuk v. Bakery & Confect. Union*, 638 F.Supp. 365, 370 (N.D.Ill.1984), *aff'd*, 791 F.2d 548 (7th Cir.1986) (interpreting a treasury regulation requiring "notice by . . . mailing" to require the mailing of individual notices as opposed to publication in a union newspaper). The Court accepts (as the parties agree), however, that a labor organization may comply with the notice requirement by publishing the notice in a union newspaper.

---

**2.** Senator Smathers followed Senator Dodd's statement with the following question: "Is it not a fact that most businesses and professional organizations and, in fact, most organizations of other types follow the practice of mailing to their members notices of elections?" 105 Cong. Rec. 6,519 (1959). Senator Dodd responded:

> Yes. I know that I receive notices from the few organizations in which I hold membership. I think that is done almost universally, except in the case of some labor organizations. I am frank to say, with reference to some of them, that I believe they do not mail such notices because they do not want their members to know when the election will be held.

*Id.*

Nevertheless, publication in a union newspaper is an inferior method of providing union members with notice of the election. Union members are less likely to read even the front page of a twelve-page monthly newspaper than they are to read a postcard or letter. Further, the *Union Labor News* provides information to several unions in Wisconsin. Much of this information may not be of interest to the rank-and-file members of Local 538. Consequently, the expectation that Local 538 members will read the newspaper and discover the election information is further diminished. Accordingly, § 452.100 recommends that "the notice should be conspicuously placed on the front page of the newspaper, or the front page should have a conspicuous reference to the inside page where the notice appears, so that the inclusion of the election notice in a particular issue is readily apparent to each member." 29 C.F.R. § 452.100.

The recommendation that the notice or some indication thereof be placed conspicuously on the front page provides a reasonable protection of the rights of rank-and-file members to participate fully in the elections process by ensuring that they receive notice of the election. It is more likely that a union member will glance at the front page of the newspaper. It is less likely that the member will continue reading if nothing of interest catches the member's eye. A union may not bury important election information in a multi-union newspaper and consider the notice requirement to be satisfied.

Defendant did not place notice of the election on the front page of the *Union Labor News,* nor did it place any reference on the front page to the inside page where information about the election appeared.

Each issue of the *Union Labor News* consists of twelve pages. Information concerning the election first appears on page eight of the December edition and page ten of the October, November and January editions.

Defendant argues that (at least for three of the four months [3]) the election information was placed in the "UFCW Local 538 Report to Membership" that appears in almost every issue of the *Union Labor News* and is dedicated specifically to Local 538 news. This fact suggests that members of Local 538 would know where in the newspaper to look for Local 538 election information. The question, however, is whether they would know to look for such information at all. Members of Local 538 are under no obligation to search the newspaper for important announcements of upcoming elections. The goal of § 481(e) is to promote maximum participation in union elections by ensuring that each union member receives effective notice of the election—not just those members who diligently read the UFCW Local 538 Report to Membership each month.

The mere inclusion of information in a newspaper or other publication that happens to be delivered by mail is insufficient to satisfy the notice requirement of § 481(e). Such notice must be conspicuous: its inclusion must be readily apparent to each member. The information contained within the *Union Labor News* was not conspicuous. Accordingly, defendant failed to provide "notice" as required by § 481(e).

■ The Court next considers whether defendant's failure to provide notice may have affected the outcome of the election. 29 U.S.C. § 482(c). By proving a violation

---

**3.** In January (the month of the election) the election information was placed in a section titled "Laborers Local 464 Laborers Report." The Court doubts whether even Local 538's most devoted readers of the *Union Labor News* would read the monthly announcements of other unrelated unions.

of § 481(e), plaintiff has created a prima facie case that the election may have been affected. *Hotel Employees Union, Local 6*, 391 U.S. at 506–07, 88 S.Ct. 1743; *Local Union No. 639*, 494 F.2d at 1097.

Defendant argues at length that election information posted on bulletin boards, distributed in campaign literature at Local 538 plants, discussed at union meetings, and even contained on tee-shirts distributed by one candidate provided sufficient "notice" of the election to cure defendant's failure to provide notice by mail. "It is clear," however, "that Congress intended at a minimum that notice be mailed to each member and that other means, however reasonable, were insufficient." *Local Union No. 639*, 494 F.2d at 1097–98. "Whether the members who did not vote and did not receive notice would have actually voted and, if so, for whom is not a proper subject of judicial inquiry." *Reich*, 11 F.3d at 1501. Rather, the Court counts "how many additional eligible voters (who did not actually vote) would have received notices had there been compliance with the statute. If the number is sufficient to affect the outcome of the election, the results must be set aside." *Id.* Defendant's failure to give notice may have affected the election. Local 538 has 2,100 members. None received notice of the election as required by § 481(e). Defendant argues that only 1,979 members were eligible to vote. Assuming this to be true, the number of eligible voters who neither received notice nor voted is 765. The margin of victory in the election ranged from only 15 votes in the Secretary–Treasurer election to 453 in the President election. Accordingly, the results of the 2003 election must be set aside and a new election ordered.

## ORDER

IT IS ORDERED that plaintiff's motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that the January 23 and 24, 2003 election conducted by defendant Local 538 of the United Food and Commercial Workers International Union, AFL–CIO is declared void and defendant is directed to conduct a new election of officers under the supervision of the Secretary of Labor in conformity, in so far as is lawful and practicable, with the constitution and bylaws of the labor organization. Let judgment be entered accordingly.