In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1109

Robert J. Matz, individually and on
behalf of all others similarly situated,

Plaintiff-Appellee,

v.

Household International Tax
Reduction Investment Plan,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 96 C 1095--Joan B. Gottschall, Judge.

On Remand From
The United States Supreme Court

Submitted July 25, 2001--Decided September 7, 2001

Before Bauer, Coffey, and Kanne, Circuit
Judges.

Bauer, Circuit Judge.  Robert J. Matz
filed an ERISA action, claiming
entitlement to benefits as a result of a
partial termination of a retirement
benefit plan. The district court held
that in determining whether partial
termination occurred: (1) both vested and
non-vested plan participants should be
counted, see Matz v. Household Int'l Tax
Reduction Inv. Plan, 1998 WL 851491, *5
(N.D. Ill. Dec. 1, 1998); and (2)
multiple plan years could be aggregated,
see 1999 WL 754659, *6 (N.D. Ill. Sept.
9, 1999). The Plan contested the district
court's decisions on interlocutory
appeal, and in 227 F.3d 971 (7th Cir.
2000), we affirmed. The Plan petitioned
for writ of certiorari, which the Supreme
Court granted, thereby vacating and
remanding the case to us for further
consideration in light of United States
v. Mead Corp., 121 S. Ct. 2164 (2001). On
remand, we are faced with the question of
to what extent we must defer to the
interpretation of "partial termination"
by the IRS found in an amicus brief,
which is one of the agencies responsible

for administering the partial termination statute.

In Mead, the Supreme Court tried to delineate levels of judicial deference owed to actions by administrative agencies. See id. at 2176. The Court held that Chevron deference is mandatory when Congress has expressly or implicitly indicated that it intended an agency to speak with the force of law on a matter, and the agency's position on that matter is reasonable. See id. at 2171-72. The Court explained that Congress generally indicates its intention "when it provides for a relatively formal administrative procedure," such as "notice-and-comment rulemaking or formal adjudication." Id. at 2172-73. However, the Court left open the possibility that Chevron deference may be appropriate in some instances even without such formality, although it did not clearly outline these instances. See id. at 2173.

In delineating this spectrum of deference, the Court confirmed its holding in Skidmore v. Swift & Co., 323 U.S. 134 (1944) that "an agency's interpretation may merit some deference whatever its form, given the 'specialized experience and broader investigations and information' available to the agency . . . ." Id. at 2175 (quoting 323 U.S. at 139). The Court instructed that determining whether Skidmore deference is owed turns on the "'thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.'" Id. at 2172 (quoting Skidmore, 323 U.S. at 140). Generally, pursuant to Skidmore deference, an agency's position may be accorded respect depending on its persuasiveness. See id. at 2175-76.

In our first opinion in this case we echoed the district court's sentiment that if we were writing on a blank slate we would be inclined to hold that only non-vested participants ought to be counted in determining whether partial termination occurred. However, we felt constrained by Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984) to defer to the IRS' reasonable interpretation of the partial termination statute. In taking this posi

tion, we mimicked the reasoning in Weil v. Retirement Plan Admin. Comm., 933 F.2d 106 (2d Cir. 1991). In Weil, the Second Circuit asked the IRS to submit an amicus brief regarding the meaning of "partial termination." 933 F.2d at 107. Supported by Revenue Rulings and its position in the Plan Termination Handbook contained in the Internal Revenue Manual, the IRS submitted its interpretation that "'all terminated participants, both vested and non[-]vested, should be counted in determining whether a partial termination has occurred.'" Id. The Weil panel deferred to the IRS' offered position in the amicus brief pursuant to Chevron. And, in our first opinion in this case, we deferred to the Weil court's deference.

We now hold that the IRS' position in the amicus brief was an informal agency policy pronouncement not entitled to Chevron deference. See Callaway v. C.I.R., 231 F.3d 106, 132-33 (2d Cir. 2000) (following Auer v. Robbins, recognizing that the court had previously afforded Chevron deference to an agency's position in an amicus brief, but holding that the agency's position in the brief was inconsistent with positions it had previously taken); Ball v. Memphis Bar-B-Q Co., Inc., 228 F.3d 360, 365 (4th Cir. 2000) (holding that the Secretary of Labor's interpretation of the Fair Labor Standards Act urged in an amicus brief was not entitled to Chevron deference); Doe v. Mutual of Omaha Ins. Co., 179 F.3d 557, 563 (7th Cir. 1999) (discussing Auer and Chevron regarding the amount of deference an amicus brief is due); Commonwealth Edison Co. v. Vega, 174 F.3d 870, 875 (7th Cir. 1999) (same); but see Auer v. Robbins, 519 U.S. 452, 462 (1997) (affording Chevron deference to the Secretary of Labor's interpretation of the Fair Labor Standards Act in its amicus brief because it was not a post hoc rationalization and reflected the agency's fair and considered judgment); Jones v. American Postal Workers Union, 192 F.3d 417, 427 (4th Cir. 1999) (relying on Auer to hold that the EEOC's interpretation of Title VII in its amicus brief was entitled to Chevron deference because it was not a post hoc rationalization and reflected the agency's fair and considered judgment, and was a valid interpretation). Although the Supreme Court indicated in Mead that

Chevron deference may apply to interpretations developed from less formal rulemaking procedures, it did not expressly outline when this would be the case. The IRS' position in the amicus brief was not born from a formal policymaking procedure. We do not believe that a position set forth in an amicus brief, supported by some Revenue Rulings and an agency manual are formal enough to warrant Chevron treatment. In Mead, the Court declined to give Chevron deference to a tariff classification ruling issued by the United States Customs Service. 121 S. Ct. at 2174. The Court explained that deference was not due because Congress did not indicate that it meant to delegate authority to Customs to issue classification rulings with the force of law, Customs did not engage in notice-and-comment practice when issuing the rulings, and they were not binding on third parties. See id. We do not consider a position in an amicus brief to be more deserving of Chevron deference than a tariff classification ruling. Upon reading Mead, we find that a litigation position in an amicus brief, perhaps just as agency interpretations of statutes contained in formats such as opinion letters, policy statements, agency manuals, and enforcement guidelines, see id. at 2175, are entitled to respect only to the extent that those interpretations have the power to persuade pursuant to Skidmore.

Therefore, since we are not bound by the IRS' position under Chevron, any deference we afford it under Skidmore depends on its thoroughness, validity, consistency, and persuasiveness. As noted, in our first opinion, although we found the IRS' position reasonable under Chevron, we also found it unpersuasive. As we noted, the meaning of "partial termination" is unclear because the statutory language is ambiguous, the Treasury Regulation is not helpful, the statutory framework offers no assistance, and the legislative history provides little more guidance. See Matz, 227 F.3d at 974. Thus, we looked to the statute's purposes, which are to protect employees' legitimate expectation of pension benefits, and to prevent employers from abusing pension plans to reap tax benefits. See id. at 975. We agree with the Plan that counting vested participants "would further neither of these purposes." Id. "Vested participants

do not need further protection for their pension benefits and do not benefit from a finding of partial termination. Their benefits, by virtue of vesting, are nonforfeitable. The employer gains nothing either. No monies revert back to it because the benefits are vested and non[ ]forfeitable." Id. We agreed with the notion voiced in Morales v. Pan Am. Life Ins. Co., 718 F. Supp. 1297 (E.D. La. 1989) and Weil that perhaps only non-vested participants ought to be counted, although neither court so held. Since we indicated that if we were writing on a blank slate we would have held differently, we now adopt the rule that only non-vested participants should be counted in determining whether partial termination of a pension plan has occurred.

Finally, the Plan asks us to reconsider our holding that multiple plan years can be aggregated in determining partial termination. See Matz, 227 F.3d at 976-77. We decline to do so. This aspect of our holding paid no deference to the IRS expressly because the IRS had not taken a position on the issue. See Matz, 227 F.3d at 977. Thus, since we analyzed the issue without deference to the IRS, the Supreme Court's vacation and remand in light of Mead did not implicate this holding; therefore, it stands.

Thus, we hold that only non-vested participants should be counted in the partial termination analysis, and hereby Reverse and Remand this case to the district court for further proceedings consistent with this opinion.