In the

# United States Court of Appeals

### For the Seventh Circuit

———————————

Nos. 14-1683, 14-2507

ROBERT J. MATZ, individually and on behalf of all others
   similarly situated,

*Plaintiff-Appellant,*

*v.*

HOUSEHOLD INTERNATIONAL TAX REDUCTION INVESTMENT
   PLAN,

*Defendant-Appellee.*

———————————

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 96 C 1095 — **Joan B. Gottschall**, *Judge.*

———————————

SUBMITTED OCTOBER 23, 2014 — DECIDED DECEMBER 24, 2014

———————————

Before WOOD, *Chief Judge*, and POSNER and RIPPLE, *Circuit
Judges*.

POSNER, *Circuit Judge*. Before us is the fifth appeal in a
seemingly interminable class action suit, filed 2 months short
of 19 years ago. The suit claims that a defined-contribution
ERISA pension plan in which the employer matched contri-
butions that its employees made was partially terminated.

Our opinion deciding the third appeal, reported at 388 F.3d 570 (7th Cir. 2004), established the approach to be used by the district court to determine the validity of the claim. Using that approach the district judge granted summary judgment in favor of the defendant. The named plaintiff (which is to say the class representative) has appealed. In a separate appeal, No. 14-2507, he challenges the district court's award of some $64,000 in costs to the defendant. That challenge is frivolous.

When a pension plan is terminated, the rights of the participants in the plan vest in full, and so none of the money contributed by the employer to the individual employees' retirement accounts is returned to the employer. Full vesting is required in the case of partial as well as total terminations. 26 U.S.C. § 411(d)(3)(A); 26 C.F.R. § 1.401-6(b)(2). In our 2004 opinion we said in explanation of the rule that if any of the money in the employees' retirement accounts were returned to the employer, he would obtain a tax windfall that might induce termination because earnings on the employer's contributions are not taxable, provided, as is commonplace, that the plan is "tax-qualified." We now believe that we were mistaken. Although the employer's contributions to a plan do receive tax-free buildup as just noted, any funds that the employer removes from the plan are taxed to him as normal income and are also subject to an excise tax of either 20 or 50 percent. 26 U.S.C. § 4980.

The actual reason for the full-vesting rule appears to be to protect employees against uncertainty. Although they are informed of the vesting schedule in the employer's pension plan when they accept employment and thus could be thought to have assumed the risk of losing benefits should

the plan be terminated, they would find it difficult to insure against the risk.

But whatever the correct rationale for full vesting in the case of a partial termination, it does not affect our decision today, which turns on ascertaining whether a termination of some plan participants (as by terminating their employment) amounted to a partial termination of the plan, thereby requiring full vesting of plan benefits in the terminated plan participants.

There was no usable statutory or regulatory definition of "partial termination" when this case began. So we adopted our own in our 2004 opinion: "a rebuttable presumption that a 20 percent or greater reduction in plan participants is a partial termination and that a smaller reduction is not. … [But] we assume … that there is a band around 20 percent … . A generous band would run from 10 percent to 40 percent. Below 10 percent, the reduction in coverage should be conclusively presumed not to be a partial termination; above 40 percent, it should be conclusively presumed to be a partial termination." 388 F.3d at 577. The Internal Revenue Service has adopted our suggested 20 percent presumption, Rev. Rul. 2007-43 (2007), but has not specified a percentage (such as our 10 percent) below which there would be a conclusive presumption that no partial termination had occurred.

Household International, Inc., which owned subsidiaries that employed Matz and the other class members, was a sprawling conglomerate until the mid-1980s, when it began to sell off a number of the subsidiaries. (In its present, stripped-down form, it's called HSBC Finance Corporation.) The plaintiff was employed by one of the subsidiaries, Hamilton Investments, Inc., from March 1989 until the sale of

Hamilton at the end of August 1994. Matz argues that in 1993 Household adopted a restructuring plan that directed the shrinkage that began the following year and concluded in 1996, by which time the elimination of subsidiaries, plus layoffs of some workers in retained subsidiaries, had reduced the total number of participants in Household International's pension plan by at least 20 percent.

In general the period over which plan reductions may be aggregated to determine whether a partial termination has occurred is a single plan year. But we held in a *Matz* decision in 2000 that because nothing "requires a significant corporate event to occur within a plan year, Matz can combine terminations from 1994, 1995 and 1996, provided that he show that the corporate events of those years were related. We believe this view reflects the realities of the modern corporate world. Mergers and corporate reorganizations have grown into large and complex events, and often cannot be completed in one year. Furthermore, to establish a rigid rule that only terminations in individual plan years can be counted allows an unscrupulous employer to terminate some participants in December of one year and January of the next year, thereby eviscerating … the purpose of protecting employee benefits … . We are convinced that the requirement that the multiple year terminations be proven related prevents a plaintiff from gaining undue advantage too." *Matz v. Household Int'l Tax Reduction Investment Plan*, 227 F.3d 971, 977 (7th Cir. 2000) (citations omitted), vacated on unrelated grounds, 533 U.S. 218 (2001) (mem.); see also Rev. Rul. 2007-43, *supra*.

The district judge had thus to decide whether the series of reductions in the number of plan participants should be

considered a single partial termination. Examining the documentation that the plaintiff contends amounted to a restructuring plan that tied all the subsequent terminations together, the judge determined that there had been no such plan—that the decisions to sell particular subsidiaries had been made sequentially, on the basis of economic conditions in the particular market in which each subsidiary operated, and that these conditions had varied from market to market. Restricting her focus to 1994, the year in which Matz had been terminated, the judge found that the number of plan participants had fallen by less than 5 percent—far below both the 20 percent presumptive cutoff for partial terminations and our 10 percent irrebuttable cutoff.

So Matz loses. But a complication ignored by the district court and by the parties as well is that this is a class action, and Matz merely the class representative. Ordinarily when a class representative is dismissed on grounds applicable to him but not to all other members of the class, the suit is not dismissed but rather another member of the class is substituted as class representative. *Sosna v. Iowa*, 419 U.S. 393, 399 (1975); *Robinson v. Sheriff of Cook County*, 167 F.3d 1155, 1157 (7th Cir. 1999). But there is no other eligible class representative in this case. Employees of seven subsidiaries of Household International were terminated. Matz was terminated by Hamilton Investments in 1994; the percentage of Hamilton's employees who were terminated was as we said below 5 percent of the plan participants in that year. Household's sale of another subsidiary, Household Bank, resulted in the termination of an additional 9.5 percent of plan participants. As for the other five subsidiaries, their percentages of plan participants terminated were even lower than Hamilton's. For completeness we note that even if all the terminations

were deemed to constitute a single termination, the percent-age terminated would be only 17 percent, still below the 20 percent cutoff and with no justification shown for waiving it.

The suit has no merit, and the judgment dismissing it (while awarding costs to the defendant) is therefore

AFFIRMED.